## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## ATHENS DIVISION

RACHEL MILLS, KEELA
SINGLETON, ALLISON BARROW,
ALLYSSA PEACE, ALEXA
ARMSTRONG, ALMA KAEMPF,
BRIANNA HEAD, KENNETH
MARTINEZ, and MADISON
McDEARIS, individually and on
behalf of all others similarly situated,

       *Plaintiffs*,

    **v.**

LAST RESORT GRILL, INC.,
and STANLEY WALKER

       *Defendants*.

CIVIL ACTION FILE NO.

CLASS ACTION
JURY DEMAND

## <u>COMPLAINT</u>

**NOW COME** Rachel Mills (hereinafter "Plaintiff Mills"), Keela Singleton (hereinafter "Plaintiff Singleton"), Allyssa Peace (hereinafter "Plaintiff Peace"), Allison Barrow (hereinafter "Plaintiff Barrow"), Alma Kaempf (hereinafter "Plaintiff Kaempf"), Brianna Head (hereinafter "Plaintiff Head"), Alexa Armstrong (hereinafter "Plaintiff Armstrong"), Kenneth Martinez (hereinafter "Plaintiff Martinez"), and Madison McDearis (hereinafter "Plaintiff McDearis"), individually and on behalf of all others similarly situated (hereinafter collectively "Plaintiffs") and assert this Complaint against Defendants the Last Resort Grill,

Inc. (hereinafter "Defendant LRG") and Stanley Walker (hereinafter "Defendant Walker")(collectively as "Defendants") for violations of Title VII of the Civil Rights Act of 1964, as amended, 42, U.S.C. § 2000e, *et seq.* (hereinafter "Title VII") and for intentional infliction of emotional distress, invasion of privacy, battery, and negligent hiring/retention. Plaintiffs state more fully as follows:

<u>INTRODUCTION</u>

1.

Defendant LRG is a well-known, long standing restaurant located in Athens, Georgia.  Melissa Clegg and Jamshad Zarnegar are co-owners of Defendant LRG. Defendant Walker was hired as the General Manager of Defendant LRG in November 2017, a position which he kept until March or June 2020 (due to the restaurant closing and restructuring related to the Covid pandemic).

2.

The Plaintiffs are all former employees of Defendant LRG.  The Plaintiffs – except for Kenneth Martinez (a former cook) – are all female employees who worked for Defendant LRG as hosts/server assistants, servers, and bartenders.  As such, Defendant Walker was their direct, ultimate supervisor.  Immediately upon his hiring and until the restaurant closed due to Covid in March 2020, Defendant Walker constantly, severely, and explicitly harassed, propositioned and, if rebuffed, punished female employees based upon their sex.  For example,

Defendant Walker would constantly touch female employees, would press against female employees, would make comments about their bodies, including comments about their breasts, would ask questions about their personal lives, including questions about sexual preferences and habits, would ask female employees to meet him after work hours, and would ask female employees to "go home with him." If a female employee rebuffed Defendant Walker, he would punish them, including giving them less valuable shifts, reducing or altering their work shifts, belittling their concerns, telling them that they were "weak," unequally disciplining them, and sabotaging their work justifying his termination of their employment. Defendant LRG, in turn, either fired anyone who complained about Defendant Walker or required that affected female employees sign nondisclosure/release documents (without the benefit of counsel or allowing the employees to keep a copy of the documents they were forced to sign).

3.

As a result of Defendant LRG's systemic hostile environment, the Plaintiffs have brought suit under Title VII for quid pro quo discrimination, hostile work environment discrimination and/or retaliation (applicable to Martinez), and under Georgia law for the torts of intentional infliction of emotional distress, invasion of privacy, battery and negligent hiring/retention. Plaintiffs seek to represent a class of former employees who were subjected to these illegal practices.

3

## JURISDICTION

### 4.

Plaintiffs bring this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et. seq*.  This Court has original jurisdiction pursuant to 42 U.S.C. §2003e-5(f), 28 U.S.C. §1345, 28 U.S.C. §1331, and 28 U.S.C. §1343(a).  The Court has pendent jurisdiction over Plaintiffs' Georgia state law claims pursuant to 28 U.S.C. §1367.

## VENUE

### 5.

Defendant LRG is a Georgia-based corporation with both its corporate office and restaurant at 174/184 West Clayton Street, Athens, Georgia.  Venue for this action properly lies in the Middle District of Georgia, Athens Division, pursuant to 42 U.S.C. §2003e-5(f)(3), 28. U.S.C. §1391(b) and §1391(c)(2), and Local Rule 3.1, and 3.4, M.D. Ga.

## PARTIES

### 6.

Plaintiffs are all former employees of Defendant LRG employed, at various times, from November 2017 through June 2020 (hereinafter this period will be referred to as "the actionable period").  All the Plaintiffs, except Kenneth Martinez,

are female, and worked as hosts/server assistants, servers and/or bartenders.

Plaintiff Martinez, a male, worked as a cook.

7.

Defendant LRG operates a restaurant, the Last Resort Grill, located at

174/184 West Clayton Street, Athens, Georgia.

8.

Melissa Clegg (hereinafter "Clegg") is the C.E.O. of Defendant LRG.

9.

Jamshad Zarnegar (hereinafter "Zarnegar") is the Operating Manager and/or

Managing Partner of Defendant LRG.

10.

Defendant LRG is owned, in whole or in part, by Clegg.

11.

Defendant LRG is also owned, in whole or in part, by Zarnegar.

12.

At all times during the actionable period, Defendant LRG employed fifteen

(15) or more employees for each working day in at least 20 or more calendar

weeks, including Plaintiffs.  As such, Defendant LRG is subject to, and governed

by, Title VII.

13.

Defendant LRG is a "person" within the meaning of 42 U.S.C. §2000e(a) and an "employer" within the meaning of 42 U.S.C. §2000e(b).

## ADMINISTRATIVE CONDITIONS PRECENDANT

14.

Plaintiffs Mills and Singleton satisfied all conditions precedent to filing this action, including filing Charges of Discrimination with the U.S. Equal Employment Opportunity Commission (hereinafter "EEOC"). See the attached Exhibit "A."

15.

Plaintiffs Mills and Singleton received their Notices of Right to Sue from the EEOC, and this lawsuit is being filed within ninety (90) days of that receipt. See the attached Exhibit "B."

16.

All other Plaintiffs have standing to bring this action under Title VII pursuant to the single filing rule and continuing violation doctrine.

FACTUAL ALLEGATIONS

Sub-Part A: Defendant Walker

17.

Clegg has or had an ownership interest in Five & Ten, Inc., which operates a restaurant at 1073 S Milledge Avenue, Athens, Georgia (hereinafter "Five & Ten").

18.

Zarnegar has or had an ownership interest in Five & Ten.

19.

Before November 2017, Defendant Walker was employed at Five & Ten as the General Manager.

20.

At some point in time in 2017, Five & Ten requested that Defendant Walker resign, in lieu of termination, as the General Manager in response to complaints from a female employee regarding allegations of sexual harassment by Defendant Walker.

21.

In approximately November 2017, Clegg and Zarnegar employed Defendant Walker as the General Manager of Defendant LRG.

22.

Defendant LRG employed Defendant Walker as the General Manager of the restaurant from approximately November 2017 through the Spring or early Summer of 2020.

### Sub-Part B: Plaintiff Mills

23.

Plaintiff Mills began working for Defendant LRG on or about May 31, 2017.

24.

Plaintiff Mills worked for Defendant LRG as a hostess, server, and bartender at various times during her employment.

25.

Plaintiff Mills was sexually harassed by various male co-workers and managers, including Defendant Walker.

26.

Defendant Walker regularly put his hand on the small of Plaintiff Mills' back as he passed her in the hallway and other areas of the restaurant. Defendant Walker's hand would regularly slide down to brush the top of Plaintiff Mills' buttocks as Defendant Walker passed Plaintiff Mills. The most recent incident of Defendant Walker's grossly inapproriarte physical touching was some time in 2020.

8

27.

Defendant Walker regularly requested that Plaintiff Mills cease her employment with Defendant LRG so that the two could date. Defendant Walker offered Plaintiff Mills $3000 per month to resign from Defendant LRG and commit to an intimate relationship with him. The most recent request from Defendant Walker  occurred in the Spring of 2020.

28.

After an emotional and stressful break-up with Plaintiff Mills' boyfriend in late 2019, and feeling pressure from Defendant Walker's repeated requests, the two engaged in a brief relationship.

29.

So long as Plaintiff Mills maintained a personal relationship with Defendant Walker, she received an optimal work schedule, i.e., she was scheduled to work premium shifts such as the dinner shift.  Other shifts, such as working as a server's assistant/host during lunch, were significantly less financially lucrative. Defendant Walker also only scheduled Plaintiff Mills for shifts that he managed, especially during their brief relationship.

30.

When Plaintiff Mills ended the relationship with Defendant Walker, he began to punish her. For example, Defendant Walker would schedule her for less

lucrative shifts.  Additionally, Defendant Walker would seat customers at all once

in Plaintiff Mills' assigned section attempting to sabotage her work.  Further

Defendant Walker would order other hosts and servers to **_not_** help Plaintiff Walker

if she appeared to be having difficulty.  Further, after Plaintiff Mills ended her

sexual relationship with Defendant Walker, he began to be more critical of Plaintiff

Mills' work and he would "flyspeck" her work.

31.

Plaintiff Mills was tangibly impacted by Defendant Walker's behavior in the

following ways: Plaintiff Mills began seeing a therapist and taking medication for

anxiety and depression. Plaintiff Mills became dependent on alcohol and

antipsychotics during her time at the restaurant and during her interactions with

Defendant Walker. Plaintiff Mills was also prescribed medication for stomach

ulcers and other physical issues that stemmed from stress.

32.

Plaintiff Mills was terminated by Defendant Walker on March 8, 2020 due

to several customer complaints.  Those situations arose, however, because Walker

would use his ability to seat customers (in a specific server's section) as a reward

or punishment.  In this instance, Defendant Walker "overloaded" Plaintiff Mills'

section by assigning consecutive customers rather than rotating customers across

10

all sections.  When the customers complained about the quality of service,

Defendant Walker sent Plaintiff Mills home early and later fired her that evening.

<u>Sub-Part C: Plaintiff Singleton</u>

33.

Plaintiff Singleton began working for Defendant LRG on or about January

29, 2018.

34.

Plaintiff Singleton worked for Defendant LRG as a hostess, server, and

bartender at various times during her employment.

35.

Defendant Walker hired Plaintiff Singleton to work at the restaurant.

36.

Defendant Walker began almost immediately upon her hiring to sexually

harass Plaintiff Singleton.

37.

For example, Defendant Walker would address Plaintiff Singleton as

"kitten" on a regular and on-going basis.

38.

While Plaintiff Singleton understood that she had been hired as a server – a

more lucrative position – Defendant Walker assigned her to bartending.  When

Plaintiff Singleton asked Defendant Walker why she was not being moved to server, Defendant Walker replied that "if she behaved, she would be moved to server."

39.

Defendant Walker would touch Plaintiff Singleton on a regular and on-going basis on the small of her back in such a manner that a finger would touch her buttocks, her arms, her shoulders, and her legs.

40.

Defendant Walker would regularly approach Plaintiff Singleton from behind while she was rolling silverware or in other confined spaces, such as the stock room, and press himself in to Plaintiff Singleton's back side so that Defendant Walker's genitalia were pressed against Plaintiff Singleton's buttocks. Plaintiff Singleton distinctly remembers the smell of Defendant Walker's breath as a result.

41.

Defendant Walker regularly would watch Plaintiff Singleton cleaning the glass plated "cake cooler." The angle at which Defendant Walker would stand and the angle at which Plaintiff Singleton was positioned when cleaning allowed Defendant Walker to look down Plaintiff Singleton's shirt to view her bosom.

42.

Defendant Walker regularly made comments about Plaintiff Singleton's appearance and body-type in a sexually suggestive manner.

43.

Defendant Walker would regularly send Plaintiff Singleton personal, non-work-related text messages outside of work.

44.

In March or April 2018, Defendant Walker made comments at work to Singleton about her preferences for sexual intercourse. While secluded in the stock room Defendant Walker stated, "You look like the kind of girl who has sex with her t-shirt on."

45.

In December 2019, a male co-worker, Tyler Brown, complained to Defendant LRG's management about Defendant Walker's behavior and actions toward the female staff, including Singleton.  Defendant Walker subsequently terminated Tyler Brown's employment.

46.

In January 2020, after both Plaintiff Martinez and Tyler Brown complained to Defendant LRG about Defendant Walker's behavior, Defendant LRG required Plaintiff Singleton to attend a meeting with Clegg and another manager, Kim Rein

(hereinafter "Rein"). Clegg and Rein questioned Singleton about Defendant Walker's actions. Clegg and Rein required that Plaintiff Singleton to sign what she understood to be a general release and/or non-disclosure agreement, for which Singleton received no consideration. Nothing was apparently done to Defendant Walker.

47.

Plaintiff Singleton was tangibly impacted by Defendant Walker's behavior in the following ways: Plaintiff Singleton sought dialectical and cognitive behavioral therapy; Plaintiff Singleton relapsed in self harm behavior (i.e. cutting or scratching oneself) as a direct response to obsessive critiques and insults from Defendant Walker; Plaintiff Singleton was prescribed antipsychotics (and the dosage was increased due to work-related stress); she suffered from stress-induced vomiting, leading to weight loss and health issues; insomnia; and cigarette and alcohol abuse as coping mechanisms.

48.

Defendant Walker continued to reach out to Plaintiff Singleton via text during known times of mental instability, including after Defendant Walker learned that Plaintiff Singleton had been questioned by Clegg regarding Defendant Walker's actions and sexual harassment of female staff.

49.

Defendant Walker approached Plaintiff Singleton multiple times outside of work, after finding out where she was going with friends and would attempt to "tag-along."

50.

Defendant Walker made comments on multiple occasions about joining Plaintiff Singleton's relationship.

51.

While Defendant Walker's behavior became less obvious after the January 2020 meeting, it did not stop.  Defendant Walker would use his control over scheduling, disciplinary actions, and seating to punish women, including Plaintiff Singleton.

52.

Plaintiff Singleton resigned from Defendant LRG in June 2020.

Sub-Part D: Plaintiff Barrow

53.

Plaintiff Barrow was hired in early July 2019 as a server's assistant and then moved to bartender at the restaurant.

15

54.

Defendant Walker would routinely comment on Plaintiff Barrow's appearance and clothes.

55.

Defendant Walker would routinely stare at Plaintiff Barrow's breasts and make comments about their size and appearance.

56.

Defendant Walker would stand as close as possible to Plaintiff Barrow, and brush past her in confined spaces at the restaurant in a manner allowing Defendant Walker to press himself up against Plaintiff Walker's buttocks and bosom. Defendant Walker also would routinely brush his hand across the small of Barrow's back.

57.

As with Plaintiff Singleton, Defendant Walker would regularly watch Plaintiff Barrow cleaning the glass plated "cake cooler." The angle at which Defendant Walker would stand and the angle at which Plaintiff Barrow was positioned when cleaning allowed Defendant Walker to look down Plaintiff Barrow's shirt to view her bosom. Furthermore, Defendant Walker would routinely require Plaintiff Barrow to adjust or clean items behind the bar so that Plaintiff

Barrow would be required to bend over in order to perform the task, at which time Defendant Walker would maneuver himself to view Plaintiff Barrow's buttocks.

58.

As a result of Defendant Walker's repeated sexual harassment, approximately one month after being hired, Plaintiff Barrow was hospitalized and held for observation for seventy-two (72) hours due to stress and anxiety.

59.

In December 2019, Clegg and Rein met with Plaintiff Barrow and questioned her in detail about Defendant Walker's behavior. Plaintiff Barrow described Defendant Walker's behavior. Plaintiff Barrow was immediately suspended, without pay, by Clegg and Rein, and two (2) weeks later, Plaintiff Barrow was fired for allegedly making false allegations about Defendant Walker's behavior.

<u>Sub-Part E: Plaintiff Head</u>

60.

Plaintiff Head was hired in early May 2019 as a server's assistant/host.

61.

As with the other female Plaintiffs, Defendant Walker began to harass Plaintiff Head soon after she was hired.

62.

Defendant Walker would physically touch Plaintiff Head in the small of her back and the top of her buttocks. In addition, Defendant Walker would regularly press against her in such a way as to drive his genitalia into her when he had the opportunity.

63.

In one instance, Defendant Walker ran his hand up Plaintiff Head's skirt and repeatedly caressed her upper thigh with his hand.

64.

Defendant Walker made constant comments about Plaintiff Head's romantic relationships, including comments encouraging Plaintiff Head to "sleep around" and "try women."

65.

As with the other female Plaintiffs, Defendant Walker would text Plaintiff Head outside of work and ask personal questions.

66.

In one situation, Defendant Walker texted Plaintiff Head asking where she was, and then showed up at the same bar/restaurant.  Defendant Walker insisted that Plaintiff Head "come home with me."  Plaintiff Head left the restaurant to avoid Defendant Walker.

67.

Defendant Walker texted Plaintiff Head at least once, and quite likely twice, to ask Plaintiff Head out on a date. Plaintiff Head declined.

68.

After spurring Defendant Walker's advances, and presumably to punish Plaintiff Head, Defendant Walker began making up work rules that only applied to Plaintiff Head. Defendant Walker would follow Plaintiff Head – who was only a server's assistant – and critique her work. Other employees, doing the same job and same tasks, were not followed, did not have special work rules, and were not critiqued.

69.

Defendant Walker told Plaintiff Head that he and the female managers at Defendant LRG "were close" and that they would protect him, especially Rein.

70.

Plaintiff Head resigned her position at the restaurant on July 16, 2019, due to Defendant Walker's behavior toward her. After Plaintiff Head submitted her two (2) week notice, Defendant Walker again tried to convince Plaintiff Head "get to know me better" and reminded Plaintiff Head that he was "interested in her."

Sub-Part F: Plaintiff Peace

71.

Plaintiff Peace was hired in or about August 2014 and worked as a server and host/server's assistant.

72.

Plaintiff Peace began being sexually harassed by Defendant Walker approximately six (6) months to one (1) year after his employment at the restaurant began, i.e., in or about the Fall of 2018.

73.

Defendant Walker would frequently make comments about Plaintiff Peace's body.  For example, Walker described to Peace his inappropriate speculations and graphic visualizations about her "grooming practices" regarding her pubic hair. Defendant Walker was following closely behind Plaintiff Peace in the restaurant when Peace heard Walker snicker and say "ewwwww." Plaintiff Peace asked Defendant Walker why he laughed, and Defendant Walker replied, "I had a gross mental image, I just get the impression that you're really hairy [implying the presentation of Plaintiff Peace's pubic hair]."

74.

Regularly and consistently, Defendant Walker barraged Plaintiff Peace with comments about her breasts, specifically her breasts' size and shape, under his

breath (but within her hearing) as he walked by or when standing directly adjacent

to her. Defendant Walker would regularly whisper to Plaintiff Peace that she had

"nice tits" when walking past her in the opposite direction. Similarly, when alone

with Peace, Defendant Walker would say directly and audibly that "Your tits look

great today."

75.

Defendant Walker would regularly and extendedly stare at Plaintiff Peace's

chest when he was engaging her in conversation.

76.

Defendant Walker would manipulate and excuse his harassing behavior

towards Peace with statements such as "[Defendant Walker] felt comfortable

making comments about [Plaintiff Peace's] body because we were friends" and "I

need to have more self control around you fuckers, but you know I like to joke

with you."  In an especially forthright comment,  Defendant Walker, on several

occassions, disclosed to Plaintiff Peace that he "was having trouble controlling his

sexual impulses around women because he wasn't getting laid. "

77.

Defendant Walker consistently touched Plaintiff Peace on the small of her

back when directing her to step out of his way

78.

Defendant Walker discredited Plaintiff Peace's mental distress, in part caused by his verbal assaults and refusal to grant her time off, instead vilifying her as a poor worker and heavily pressuring her to quit.

79.

Defendant Walker terminated Plaintiff Peace in September 2019, and then manipulated the situation to make others believe that she resigned.

80.

Plaintiff Peace suffered from frequent anxiety attacks at work due, in part, to distress from Defendant Walker's intense scrutiny and aggressive verbal assaults. In addition, Plaintiff Peace suffered from panic attacks, chest pain, binge eating, crying fits, and nightmares, among other issues, as a result of her employment experience with Defendant LRG, including due to Defendant Walker's comments, behaviors, and attitude towards her.

### Sub-Part G: Plaintiff Armstong

81.

Plaintiff Armstrong began working for Defendant LRG in or about November 2017 and was employed as a server assistant.

82.

Plaintiff Armstrong regularly heard Defendant Walker make sexually degrading comments to and towards the female staff in the Restaurant. Defendant Walker asked Plaintiff Armstrong whether she was really "a blonde", implying the color of her pubic hair.

83.

Defendant Walker consistently touched Plaintiff Armstrong on the small of her back when directing her to step out of his way.

84.

Defendant Walker resigned, in part, due to Defendant Walker's harassment, in or about March 8, 2020.

Sub-Part H: Plaintiff Kaempf

85.

Plaintiff Kaempf began working for LRG in 2013 and was employed as a server.

86.

During her years at LRG, Plaintiff Kaempf was sexually harassed by various male co-workers and managers, including Jordan Sanchez, one of the head chefs, and Defendant Walker.

87.

Defendant Walker frequently made comments about Plaintiff Kaempf's sexuality and her engagement to Plaintiff McDearis.

88.

Defendant Walker repeatedly asked Plaintiff Kaempf detailed questions about her sexual activities. For example, Defendant Walker would corner her and ask Plaintiff Kaempf if she was a "top", whether Plaintiff Kaempf "enjoyed dick", whether Defendant Walker's "dick" "would be a contender [for Kaempf]."

89.

Defendant Walker asked Plaintiff Kaempf on more than one occasion if she was currently sexually interested in men, and specifically if she would consider him.

90.

After the relationship with McDearis ended, Plaintiff Kaempf began to date a man. Defendant Walker, after learning of Plaintiff Kaempf's new boyfriend, asked her questions such as: "Is it true you have a boyfriend?"; "I thought you were getting rebound dick"; "Where was my chance?"; and, "Why would you give up that good pussy?"

91.

Defendant Walker would allocate tables in a seating area to "reward" or "punish" employees, such as Kaempf, that did not reciprocate Defendant Walker's advances.

92.

As a result of Defendant Walker's actions, Plaintiff Kaempf checked herself in to a psychiatric hospital for treatment sometime between November 2019 and the first week of December 2019. Furthermore, Plaintiff Kaempf began drinking more alcohol to cope with the stress of dealing with Defendant Walker's actions.

93.

Plaintiff Kaempf ceased to work for Defendant LRG on or about March 19, 2019.

Sub-Part I: Plaintiff McDearis

94.

Plaintiff McDearis started working for Defendant LRG in 2012. Thus, Plaintiff McDearis' employment with Defendant LRG predates the hiring of Defendant Walker as General Manager by several years.

95.

Prior to Defendant Walker becoming General Manager in or about November 2017, Plaintiff McDearis had never received any disciplinary action regarding her performance as a server at the restaurant.

96.

At the time Defendant Walker was hired, Plaintiff McDearis had been dating Plaintiff Kaempf for several years.

97.

Defendant Walker began to both pursue and to sexually harass Plaintiff Kaempf upon his hiring as the General Manager.

98.

Defendant Walker told Plaintiff Kaempf that he would "take care of Plaintiff McDearis" implying that he would arrange to fire Plaintiff McDearis (in an effort to better pursue Plaintiff Kaempf).

99.

Defendant Walker wrote up McDearis twice in situations where similarly situated employees were _not_ disciplined. By way of example, Defendant Walker wrote a disciplinary action against Plaintiff McDearis for being forty-five minutes late to work (after having informed the Defendant LRG's management she would

be late) whereas, in the same week, Defendant Walker did not write up a male

employee who was similarly late when he arrived at work.

100.

Plaintiff McDearis questioned Defendant Walker regarding his reasoning for

writing her up for being late and Defendant Walker told Plaintiff McDearis that he

needed to "make an example of her."

101.

Plaintiff McDearis complained to Clegg and Zarnegar about the situation

with Defendant Walker well as Defendant Walker's sexual harassment of Plaintiff

Kaempf.  Both Clegg and Zarnegar replied that they could not get involved.

102.

Defendant Walker terminated Plaintiff McDearis following these incidents

on or about December 27, 2017.

<u>Sub-Part J: Plaintiff Martinez</u>

103.

Plaintiff Martinez was employed by Defendant LRG, Inc. starting in or

about January 2017.  Martinez was employed as a line cook.

104.

During Martinez' tenure at the Restaurant, Defendant LRG employed Tommy Wedge as the Kitchen Manager. Mr. Wedge told Plaintiff Martinez that "the very culture [of the Front-of-House at Defendant LRG] is naturally sexually harassing."

105.

Plaintiff Martinez regularly witnessed and overheard discussions amongst male employees and managers in which they would call "dibs" on young, female employees of Defendant LRG.

106.

Plaintiff Martinez regularly observed that Defendant Walker would provide preferred treatment to female servers that Walker favored sexually and/or with whom he was engaged in a sexual relationship.  For example, Walker would schedule shifts for his favored female employees in areas the servers considered the "best sections."

107.

Conversely, Plaintiff Martinez regularly witnessed Defendant Walker scheduling "bad" shifts for servers Walker was no longer interested in.  "Bad" shifts referred to be assigned one of the sections in the seating area known to support a lower volume of traffic (and hence less revenue for the server).

108.

Plaintiff Martinez overheard Defendant Walker say, "I like girls with big boobs" and "I like big tits."

109.

During his last year of employment at Defendant LRG, numerous female servers and staff members approached Plaintiff Martinez and complained of Defendant Walker's behavior.

110.

Plaintiff Martinez was approached by Plaintiffs Singleton, Barrow, Kaempf, and Mills.  All of them told Martinez that Defendant Walker would physically corner them and press himself against their bodies when no one was around to witness the event. Plaintiffs Singleton, Barrow, Kaempf and Mills told Martinez that Defendant Walker regularly pushed himself so close that they could smell his breath.

111.

Plaintiff Martinez regularly overheard female servers say that Defendant Walker had invited them for drinks after work, and that Defendant Walker had made sexual comments to them.

112.

In December 2019, Plaintiff Martinez's wife told him that several female servers had approached her in their home (during a Christmas party) and cried while describing Defendant Walker's behavior.

113.

In early January 2020, Plaintiff Martinez spoke and/or texted with Zarnegar and stated he wished to file a complaint with Defendant LRG regarding the culture of sexual harassment and Defendant Walker's behavior. Zarnegar agreed, and the two set up a meeting.

114.

Plaintiff Martinez went to the restaurant expecting to meet with Zarnegar and was surprised to see Rein and Clegg. Zarnegar did not attend the meeting.

115.

At the meeting, Clegg handed Plaintiff Martinez an approximately ten (10) page questionnaire on sexual harassment issues. Plaintiff Martinez recalls that some of the questions requested that Plaintiff Martinez criticize the management and whether there were problems with workplace sexual harassment in the Restaurant. Plaintiff Martinez completed the ten (10) page questionnaire and handed it to Clegg, who appeared "offput" by Plaintiff Martinez's responses.

116.

Plaintiff Martinez explained his responses to the ten (10) page questionnaire to Clegg. Clegg replied that Defendant LRG would "look into" the issues Plaintiff Martinez had raised regarding Defendant Walker and the culture of sexual harassment at the restaurant.

117.

Rein and Clegg then required Plaintiff Martinez to sign a document that he believes to be a non-disclosure agreement under threat of losing his position with Defendant LRG. Under duress, and without any consideration provided, Plaintiff Martinez signed the document.

118.

The next day, believed to be January 16, 2020, Plaintiff Martinez arrived at the restaurant before his day shift and asked Rein to give him the signed nondisclosure agreement so that he could tear it up.

119.

Rein told Martinez that the document was not at the restaurant but was in Clegg's possession. Later that morning, Rein gave Martinez the document and Plaintiff Martinez ripped it up.

120.

Defendant LRG immediately terminated Plaintiff Martinez's employment after he ripped up the document.

## COUNT I – TITLE VII – QUID PRO QUO SEXUAL HARASSMENT

121.

Plaintiffs restate and reallege paragraphs one (1) through one hundred twenty (120), *supra*.

122.

Plaintiffs Rachel Mills, Keela Singleton, Allyssa Peace, Allison Barrow, Alma Kaempf, Brianna Head, Alexa Armstrong, and Madison McDearis are female and therefore are members of a protected class under Title VII.

123.

Plaintiffs Mills, Singleton, Peace, Barrow, Kaempf, Armstrong, Head, and McDearis, and similarly situated employees, were discriminated against in the terms and conditions of their employment based upon their sex by Defendant LRG's supervisors.

124.

Plaintiffs Mills, Singleton, Peace, Barrow, Kaempf, Head, Armstrong, and McDearis, and similarly situated employees, were the subjects of unwelcome sexual harassment in the form of sexual advances and/or requests for sexual favors.

125.

The unwelcome harassment and/or advances were based upon sex.

126.

Submission to the unwelcome advances by Defendant LRG's supervisors was an express or implied condition for receiving job benefits.

127.

Refusal to submit to the unwelcome advances by Defendant LRG's supervisors resulted in tangible job detriment.

128.

Defendant LRG discriminated against Plaintiffs Mills, Singleton, Peace, Barrow, Kaempf, Armstrong, Head, and McDearis, and similarly situated employees, on the basis of sex in violation of Section 703(a) of Title VII, 42 U.S.C. §2000e-2(a).

129.

The unlawful employment practices described above were intentional, and were done with malice or with reckless indifference to the federally protected rights of the Plaintiffs.

130.

As a result of Defendant LRG's unlawful actions, Plaintiffs Mills, Singleton, Peace, Barrow, Kaempf, Armstrong, Head, and McDearis, and similarly situated

employees, have suffered lost compensation, emotional distress, inconvenience, humiliation, and other indignities.

131.

Plaintiffs Mills, Singleton, Peace, Barrow, Kaempf, Armstrong, Head, and McDearis, and similarly situated employees, are entitled to damages including back pay and lost benefits, front pay, compensatory damages, punitive damages, attorney's fees and costs of litigation, and all other relief recoverable under Title VII.

COUNT II – TITLE VII – HOSTILE WORK ENVIRONMENT

132.

Plaintiffs restate and reallege paragraphs one (1) through one hundred twenty (120), *supra*.

133.

Plaintiffs Rachel Mills, Keela Singleton, Allyssa Peace, Allison Barrow, Alma Kaempf, Alexa Armstrong, Brianna Head, and Madison McDearis are female and therefore are members of a protected class under Title VII.

134.

Plaintiffs Mills, Singleton, Peace, Barrow, Kaempf, Head, Armstrong and McDearis, and similarly situated employees, were discriminated against, and harassed based upon their sex by Defendant LRG's supervisors.

34

135.

The discriminatory statements, threats, and conduct were unwelcome, sufficiently severe or pervasive, detrimentally affected Plaintiffs Mills, Singleton, Peace, Barrow, Kaempf, Armstrong, Head, and McDearis, and similarly situated employees, were viewed as subjectively hostile and abusive by Plaintiffs Mills, Singleton, Peace, Barrow, Kaempf, Armstrong, Head, and McDearis, and similarly situated employees, and would be viewed as objectively hostile and abusive to a reasonable person.

136.

Plaintiffs Mills, Singleton, Peace, Barrow, Kaempf, Armstrong, Head, and McDearis complained numerous times to Defendant LRG about Defendant Walker's behavior, discrimination and harassment, and Defendant LRG had actual or constructive knowledge of the ongoing discrimination and harassment.

137.

Defendant LRG failed to take prompt and appropriate remedial action to prevent or correct further discrimination and harassment of Plaintiffs Mills, Singleton, Peace, Barrow, Kaempf, Armstrong, Head, and McDearis, and similarly situated employees.

138.

Defendant LRG discriminated against Plaintiffs Mills, Singleton, Peace, Barrow, Kaempf, Armstrong, Head, and McDearis, and similarly situated employees, on the basis of sex in violation of Section 703(a) of Title VII, 42 U.S.C. §2000e-2(a).

139.

The unlawful employment practices described above were intentional and were done with malice or with reckless indifference to the federally protected rights of the Plaintiffs.

140.

As a result of Defendant LRG's unlawful actions, Plaintiffs Mills, Singleton, Peace, Barrow, Kaempf, Armstrong, Head, and McDearis, and similarly situated employees, have suffered lost compensation, emotional distress, inconvenience, humiliation, and other indignities.

141.

Plaintiffs Mills, Singleton, Peace, Barrow, Kaempf, Armstrong, Head, and McDearis, and similarly situated employees, are entitled to damages including back pay and lost benefits, front pay, compensatory damages, punitive damages, attorney's fees and costs of litigation, and all other relief recoverable under Title VII.

## COUNT III – TITLE VII – RETALIATION

### 142.

Plaintiffs restate and reallege paragraphs one (1) through one hundred twenty (120), *supra*.

### 143.

Plaintiffs Mills, McDearis, Barrow, and Martinez engaged in statutorily protected activity by opposing conduct and actions made unlawful under Title VII.

### 144.

Plaintiffs Mills, McDearis, Barrow, and Martinez engaged in protected activity when they complained about discrimination and harassment based upon sex.

### 145.

In retaliation for their complaints, Plaintiffs Mills, McDearis, Barrow, and Martinez were fired.  The stated reasons, in each case, were pretextual.

### 146.

There is a causal connection between the complaints of Plaintiffs Mills, McDearis, Barrow, and Martinez and the materially adverse actions taken against them by Defendant LRG.

147.

The retaliation endured by Plaintiffs Mills, McDearis, Barrow, and Martinez would dissuade a reasonable employee from making complaints of discrimination and harassment.

148.

Defendant LRG retaliated against Plaintiffs Mills, McDearis, Barrow, and Martinez for engaging in protected activity in violation of Section 704(a) of Title VII, 42 U.S.C. §2000e-3(a).

149.

The unlawful employment practices described above were intentional, and were done with malice or with reckless indifference to the federally protected rights of the Plaintiffs Mills, McDearis, Barrow, and Martinez

150.

As a result of Defendant LRG's unlawful actions, Plaintiffs Mills, McDearis, Barrow, and Martinez have suffered lost compensation, emotional distress, inconvenience, humiliation, and other indignities.

151.

Plaintiffs Mills, McDearis, Barrow, and Martinez are entitled to damages including back pay and lost benefits, front pay, compensatory damages, punitive

damages, attorney's fees and costs of litigation, and all other relief recoverable
under Title VII.

## COUNT IV – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

152.

Plaintiffs restate and reallege paragraphs one (1) through one hundred
twenty (120), *supra*.

153.

Defendant Walker's treatment of Plaintiffs Mills, Singleton, Head, Barrow,
Peace, Armstrong, Kaempf and McDearis was so insulting as to naturally
humiliate, embarrass, and frighten Plaintiffs.

154.

Defendant Walker acted intentionally, willfully, maliciously and purposely,
with the intent to inflict emotional distress upon Plaintiffs Mills, Singleton, Head,
Barrow, Armstrong, Peace, Kaempf and McDearis, or with reckless disregard of
the probability of causing Plaintiffs Mills, Singleton, Head, Barrow, Peace,
Armstrong, Kaempf and McDearis emotional distress.

155.

Defendant Walker knew or should have reasonably known that as a result of
the aforementioned extreme and outrageous conduct, Plaintiffs Mills, Singleton,

Head, Barrow, Peace, Armstrong, Kaempf and McDearis would be subjected to severe emotional distress and pain and suffering.

156.

As a result of the aforementioned conduct of Defendant Walker, Plaintiffs Mills, Singleton, Head, Barrow, Peace, Armstrong, Kaempf and McDearis have suffered severe and grievous emotional distress, anxiety, nervousness, humiliation, and pain and suffering.

157.

Defendant LRG ratified Defendant Walker's behavior by, *inter alia*, retaining Defendant Walker after having actual or constructive knowledge of his unlawful behavior.

158.

Defendants are liable for all general and special damages proximately resulting from the intentional infliction of emotional distress.

159.

The acts of Defendant Walker were intentional and humiliating. Defendant LRG acquiescence in the harassment of their employees further evinces a conscious disregard for the circumstances and rights of others, and a specific intent to cause harm. Plaintiffs Mills, Singleton, Head, Barrow, Peace, Armstrong, Kaempf and McDearis are accordingly entitled to recover from Defendants, in

addition to their compensatory damages, an award of punitive damages under the laws of the State of Georgia, including but not limited to O.C.G.A. § 51-12-5.1, to punish Defendants, or to deter them from repeating such wrongful acts.

<u>COUNT V – INVASION OF PRIVACY – INTRUSION</u>

160.

Plaintiffs restate and reallege paragraphs one (1) through one hundred twenty (120), *supra*.

161.

Defendant Walker's constant prying into the private lives and affairs of Plaintiffs Mills, Singleton, Head, Barrow, Peace, Armstrong, Kaempf and McDearis constitutes an invasion of the Plaintiffs' right of privacy under Georgia law.

162.

Defendant Walker's unreasonable questioning, prying, commenting and sexual demands would be offensive or objectionable to a reasonable person.

163.

As a result of the aforementioned conduct of Defendant Walker, Plaintiffs Mills, Singleton, Head, Barrow, Peace, Armstrong, Kaempf and McDearis have suffered severe and grievous emotional distress, anxiety, nervousness, humiliation, and pain and suffering.

164.

Defendant LRG ratified Defendant Walker's behavior by, *inter alia*, retaining Defendant Walker after having actual or constructive knowledge of his unlawful behavior.

165.

Defendants are liable for all general and special damages proximately resulting from their invasion of the Plaintiff's right of privacy.

166.

The acts of Defendant Walker were intentional and humiliating.  Defendant LRG acquiescence in the harassment of their employees further evinces a conscious disregard for the circumstances and rights of others, and a specific intent to cause harm.  Plaintiffs Mills, Singleton, Head, Barrow, Peace, Armstrong, Kaempf and McDearis are accordingly entitled to recover from Defendants, in addition to their compensatory damages, an award of punitive damages under the laws of the State of Georgia, including but not limited to O.C.G.A. § 51-12-5.1, to punish Defendants, or to deter them from repeating such wrongful acts.

COUNT VI – INVASION OF PRIVACY & BATTERY –

INAPPROPRIATE TOUCHING

167.

Plaintiffs restate and reallege paragraphs one (1) through one hundred

twenty (120), *supra*.

168.

As describe more fully in each Plaintiff's fact section, Defendant Walker

routinely and constantly touched Plaintiffs Mills, Singleton, Head, Barrow, Peace,

Armstrong and Kaempf inappropriately and deliberately brushed against Plaintiffs

Mills, Singleton, Head, Barrow, Peace, Armstrong and Kaempf in a sexually

suggestive manner.

169.

On every occasion that Defendant Walker touched Plaintiffs Mills,

Singleton, Head, Barrow, Peace, and Kaempf in an offensive manner without

permission or other justification, Defendant Walker committed battery. Plaintiffs

Mills, Singleton, Head, Barrow, Peace, Armstrong and Kaempf suffered, *inter alia*,

emotional distress as a direct result of Defendant Walker's batteries.

170.

Defendant Walker is liable for all general and special damages proximately resulting from each battery of Plaintiffs Mills, Singleton, Head, Barrow, Peace, Armstrong and Kaempf.

171.

Defendant LRG ratified Defendant Walker's behavior by, *inter alia*, retaining Defendant Walker after having actual or constructive knowledge of his unlawful behavior.

172.

The acts of Defendant Walker were intentional and humiliating.  Defendant LRG acquiescence in the harassment of their employees further evinces a conscious disregard for the circumstances and rights of others, and a specific intent to cause harm.  Plaintiffs Mills, Singleton, Head, Barrow, Peace, Armstrong and Kaempf are accordingly entitled to recover from Defendants, in addition to their compensatory damages, an award of punitive damages under the laws of the State of Georgia, including but not limited to O.C.G.A. § 51-12-5.1, to punish Defendants, or to deter them from repeating such wrongful acts.

<u>COUNT VII – NEGLIGENT HIRING, SUPERVISION & RETENTION</u>

173.

Plaintiffs restate and reallege paragraphs one (1) through one hundred twenty (120), *supra*.

174.

Under these facts, it was foreseeable to Defendant LRG that Defendant Walker would engage in the sexual harassment of Plaintiffs Mills, Singleton, Head, Barrow, Peace, Armstrong and Kaempf.

175.

Defendant LRG was put on notice of Defendant Walker's behavior as early as Plaintiff McDearis' complaint to LRG management.

176.

Defendant LRG nevertheless failed and refused to act to protect Plaintiffs Mills, Singleton, Head, Barrow, Peace, Armstrong and Kaempf.

177.

Defendant LRG was willfully negligent in their hiring, supervising, and/or continuing employment of Defendant Walker.

178.

By retaining Defendant Walker after they knew or should have known of Defendant Walker's propensity to engage in sexual harassment, Defendant LRG

breached their legal duty to Plaintiffs Mills, Singleton, Head, Barrow, Peace, Armstrong and Kaempf.

### 179.

As a result of Defendant LRG's negligence, which was gross and in reckless disregard for Plaintiffs' health and safety, Plaintiffs Mills, Singleton, Head, Barrow, Peace, Armstrong and Kaempf have suffered physical harm, psychiatric harm, anguish, humiliation, and other indignities.

## COUNT VIII – ATTORNEYS' FEES & COSTS

## PURSUANT TO O.C.G.A §13-6-11

### 180.

Plaintiffs restate and reallege paragraphs one (1) through one hundred twenty (120), *supra*.

### 181.

Defendants have acted in bad faith, been stubbornly litigious, and/or caused Plaintiffs unnecessary trouble and expense in litigating this case, and Plaintiffs are thus entitled to recovery of their expenses of this litigation, including attorneys' fees, under Georgia law, including but not limited to O.C.G.A. § 13-6-11.

### 182.

Plaintiffs have put Defendants on notice that Plaintiffs seek attorneys' fees, litigation costs, and expenses from Defendants.

COUNT IX – PUNITIVE DAMAGES

PURSUANT TO O.C.G.A §51-12-5

183.

Plaintiffs restate and reallege paragraphs one (1) through one hundred twenty (120), *supra*.

184.

The acts of Defendant Walker were intentional and humiliating.  Defendant LRG acquiescence in the harassment of their employees further evinces a conscious disregard for the circumstances and rights of others, and a specific intent to cause harm.  Plaintiffs are accordingly entitled to recover from Defendants, in addition to their compensatory damages, an award of punitive damages under the laws of the State of Georgia, including but not limited to O.C.G.A. § 51-12-5.1, to punish Defendants, or to deter them from repeating such wrongful acts.

CLASS ACTION

185.

Plaintiffs bring this action on behalf of themselves and all other similarly situated former employees of Defendant LRG (hereinafter "the Class").

186.

The Class is defined as follows:

Sub-class A:  All former employees of Defendant LRG who were subjected to quid pro quo harassment, a hostile work environment and/or unlawful retaliation under Title VII from the period November 2017 through March 2020.

Sub-class B: All former employees of Defendant LRG who were subjected to the intentional infliction of emotional distress under Georgia law in the two (2) years preceding the filing of this Complaint.

Sub-class C: All former employees of Defendant LRG who were subjected to an invasion of privacy, and more specifically intrusions into personal and private affairs, under Georgia law in the two (2) years preceding the filing of this Complaint.

Sub-class D:  All former employees of Defendant LRG who were subjected to an invasion of privacy, and more specifically unwanted physical touching, and the tort of battery, under Georgia law in the two (2) years preceding the filing of this Complaint.

187.

Plaintiffs seek to have the Class certified under FRCP 23(b)(2) and/or (b)(3).

188.

The members of the proposed Class are so numerous that joinder of all members is impractical.  During the relevant time-period, Defendant LRG employed dozens of, and perhaps up to one hundred (100), servers, bartenders, and host/server assistants.   The toxic, hostile work environment created by Defendants' actions was pervasive, severe, on-going, and systemic warranting class adjudication.

189.

Plaintiffs will fairly and adequately represent and protect the interests of the Class.  There are no conflicts between Plaintiffs' claims and those of the Class, and Plaintiffs' claims are typical of the claims of the Class members.

190.

There are common questions of law and fact applicable to all members of the Class which predominate over any individualized issues. Additionally, Defendants' quid pro quo discrimination, sexually degrading physical contact, sexually explicit commentary, wholly unwarranted intrusions into the personal lives of the female servers, and retaliatory discharges permeated the culture and work environment of Defendant LRG.

191.

A class action under FRCP 23 is superior to all other available methods of adjudication.

192.

PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully requests that this Court:

A. Grant Plaintiffs a trial by jury as to all triable issues of fact;

B. Certify this lawsuit as a Class Action under FRCP 23(b)(2) and/or FRCP 23(b)(3), and authorize the issuance of notice to all potential class members;

C. Enter a judgment declaring that Plaintiffs' rights under Title VII have been violated by Defendant LRG;

D. Award lost income, prejudgment interest, compensatory damages and punitive damages to Plaintiffs, and all similarly situated former employees, to fully compensate them for their injuries caused by Defendant LRG's discriminating, harassing and retaliatory conduct, pursuant to and within the statutory framework of Section 102 of the Civil Rights Act of 1991, 42 U.S.C. §1981a;

E. Enter a judgment declaring that Plaintiffs' rights under Georgia law have been violated by Defendant Walker;

F. Enter a judgment declaring that Defendant LRG is liable to Plaintiffs for the torts of Defendant Walker on the theory of negligent retention / ratification;

G. Award Plaintiffs all damages available under the Georgia law, including general damages, special damages, lost income, compensatory damages, actual damages, and prejudgment interest thereon;

H.  Award Plaintiffs punitive damages based on Defendants' willful, malicious, intentional, and deliberate acts, including ratification, condonation and approval of said acts;

I. Award Plaintiffs their reasonable attorney's fees and expenses of litigation on Plaintiffs' state law claims pursuant to O.C.G.A. § 13-6-11; and,

J.  Award such other and further relief to which Plaintiffs may be entitled.

Respectfully submitted this fifteenth (15th) day of October 2020.


/s/ Peter H. Steckel
Peter H. Steckel
Georgia Bar Number 491936
Counsel for Plaintiffs

Steckel Law, L.L.C.
54 South Main Street
Watkinsville, Georgia 30677
(404) 717-6220
Email: peter@SteckelWorkLaw.com