**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ATHENS DIVISION**

| | |
|---|---|
| **RACHEL MILLS,** *et. al.,* | |
| *Plaintiffs*, | |
| **v.** | **CIVIL ACTION FILE NO.** |
| | **3:20-cv-00115-CDL** |
| **LAST RESORT GRILL, INC.,** | |
| and **STANLEY WALKER,** | **JURY DEMAND** |
| *Defendants*. | |

**PLAINTIFFS' BRIEF IN OPPOSITION TO**
**DEFENDANTS' MOTION TO ENFORCE AND**
**MOTION FOR SANCTIONS, AND REQUEST FOR HEARING**

**NOW COME** Plaintiffs Rachel Mills *et. al*., and file this Brief in Opposition to Defendants Last Resort Grill, Inc. ("LRG") and Stanley Walker's Motion to Enforce, Motion for Sanctions, and Request for Hearing. (Dkt. 47.) Defendants' Motions should be denied.

The "Summary of Certain Terms of Proposed Settlement" (Dkt. 47-5, which LRG now refers to as the "terms sheet," (hereinafter, the Memorandum of Understanding or "MOU") is not an enforceable agreement, for four reasons.

First, the MOU by its terms is an "agreement to agree," not a final agreement. The document's very title – "Summary of Certain Terms for Proposed Settlement" – reveals as much: specific language within the body of the document further demonstrates the intent to prepare two separate final agreements, further suggesting that the MOU itself is not the final word. Therefore, the MOU by its very terms cannot be enforced by this Court.

Second, the MOU does not reflect the Parties' agreement reached during mediation. In an e-mail message dated September 1, 2021, Defense counsel represented to both Magistrate Judge

Weigle and Plaintiffs' counsel that Plaintiffs' changes had been made to the final document. (Dkt. 47-4.) They had not. Defense counsel failed to make several important changes to the MOU that were required by the Plaintiffs and which they had agreed to make during the mediation. Because these changes were not made there was no "meeting of the minds" and there is no enforceable agreement.

Third, because Defendants chose to resolve these complex cases in a global manner and drafted the MOU as a global resolution covering claims under the Fair Labor Standards Act (FLSA), the Family and Medical Leave Act (FMLA), and Title VII of the Civil Rights Act of 1964 (Title VII), any subsequent agreement concerning the FLSA claims would be subject to Court approval under *Lynn's Food Stores v. United States*, 679 F.2d 1350 (11th Cir. 1982). The MOU is utterly non-compliant with the Eleventh Circuit Court of Appeal's decision in *Lynn's Food Stores*, and therefore unenforceable. Defendants' absurd proposal to chop the MOU into two heavily redacted "counterparts" for Court approval, and Defendants' demand that these documents be sealed, are utterly antithetical to the FLSA and *Lynn's Food Stores*.

Fourth, in seeking to enforce the MOU Defendants conveniently omit their own post-mediation behavior from the narrative: Defendants inserted new, material terms in the draft FLSA Settlement Agreement and General Settlement Agreement that were never discussed at mediation. Those material changes constitute a counteroffer under Georgia law, not an acceptance, precluding enforcement.

In addition to being a non-starter under *Lynn's Food* as an FLSA settlement, the redacted MOU fails as a knowing and voluntary waiver of Plaintiffs' Title VII claims. Finally, Defendants' demand for sanctions, vague and ambiguous as it is, also should be denied. Plaintiff Keela

Singleton violated no "mediation secrecy rules," nor would such rules (if they existed) apply to any lawsuit under the FLSA which demands transparency and abhors secrecy.

The MOU is not and never was intended to be the Parties' "final agreement," but only a framework from which the Parties would craft the actual settlement documents in both lawsuits. Defendants' Motion to Enforce should be denied.

## BACKGROUND

I.    **Brief Procedural History.**[1]

The Plaintiffs, ten former employees of Last Resort Grill, Inc., initially filed three separate lawsuits against their former employer: (1) Civil Action File No. 3:20-cv-00093-CDL alleging violations of the FLSA; (2) Civil Action File No. 3:20-cv-00115-CDL alleging violations of Title VII and for the Georgia state law-based torts of intentional infliction of emotional distress, invasion of privacy, battery, and negligent hiring/retention (Georgia tort claims); and (3) Civil Action File No. 3:20-cv-00139-CDL alleging violations of the FMLA.[2] Upon motion by the Defendants, the Court consolidated the FLSA and FMLA actions. (Dkt. 18 in Civil Action File No. 3:20-cv-00139-CDL and Dkt. 34 in Civil Action File No. 3:20-cv-00093-CDL). Also, upon Motion by the Defendants, the Court and Plaintiffs narrowed the Title VII claims to Keela Singleton and Rachel

---

[1] Pursuant to L.R. 7.1, M.D. Ga., the Plaintiffs have also filed a Statement of Material, Undisputed Facts "(SMUF)" with exhibits and citations. The fact allegations and history in this Brief in Opposition are taken from that Statement.

[2] Madison McDearis, Keela Singleton, Rachel Mills, Rachel Bailey, Alma Kaempf, Catherine Wulff, Brianna Head, Alex Bragan, Allison Barrow, and Allyssa Peace are asserting wage claims under the FLSA. Keela Singleton and Rachel Mills are asserting claims under Title VII for sexual harassment. Keela Singleton, Rachel Mills, Alma Kaempf, Catherine Wulff, Brianna Head, Allison Barrow, and Allyssa Peace are asserting claims under Georgia tort law for sexual harassment. Finally, Alma Kaempf, Rachel Mills and Allyssa Peace are asserting claims under the FMLA.

Mills. (Dkt. 4 (Plaintiffs' First Amended Complaint ("FAC") and 30 in Civil Action File No. 3:20-cv-00115-CDL.)

## II.    **Mediation**.

On September 1, 2021, the Parties attended a day-long mediation conducted by the Honorable Charles H. Weigle, U.S. Magistrate Judge, in Macon, Georgia. Keela Singleton, Rachel Mills and Allyssa Peace attended the mediation as Party-Representatives for all ten Plaintiffs. During the course of the mediation the Defendants made it abundantly clear that they would only consider a global settlement covering all Plaintiffs and all claims. Thus, the mediation covered all claims by all Plaintiffs under the FLSA, Title VII, the Georgia tort claims and the FMLA claims as a single, unified matter.

During the course of the day, Plaintiffs stated several key concerns repeatedly: (1) their ability to allocate funds among the ten Plaintiffs unilaterally; (2) their tepid acquiescence in Defendants' desire to minimize any settlement of the Plaintiffs' FLSA claims *if* those minimal numbers were offset by the larger *and non-taxable* settlement of their Title VII and Georgia tort claims; and (3) their concern that the Court might reject the global settlement under *Lynn's Food Stores*.

At the end of the day, the Plaintiffs thought they had reached an overarching, global settlement with the Defendants. In short, the Plaintiffs understood that: (1) the Defendants would pay the ten Plaintiffs a specific sum;[3] (2) would pay Plaintiffs' attorneys fees and costs of a specific sum;[4] (3) the Plaintiffs would have the sole authority to allocate funds between the individual Plaintiffs; (4) only the back wage and liquidated damages payments under the FLSA would be

---

[3] This sum, which the Defendants consider to be confidential, can be found in the MOU, Exhibit 4 of Plaintiffs' SMUF.

[4] *Id*.

taxed; and finally (5) none of the payments allocated to the Title VII/Georgia tort claims would be subject to withholding.[5]

At approximately 6:00 p.m. on September 1 defense counsel produced a detailed, 10-page document bearing both case styles and entitled "Summary of Certain Terms of Proposed Settlement."[6] Defense counsel refers to this document as "the term sheet" but it will be referred to here as the Parties' memorandum of understanding (MOU). The MOU did not reflect the Parties' entire agreement: it did not include some provisions upon which the parties had reached an agreement and did include other provisions which had never been discussed during the mediation. Plaintiffs' counsel marked up the MOU to better reflect the Parties' actual agreement. SMUF, Ex. 3. This process continued for some time until defense counsel presented a final draft and stated to the Magistrate Judge and Plaintiffs' counsel that all of Plaintiffs' changes had been made to the document. (See Dkt. 47-4 (September 1 e-mail to Judge Weigel.) At approximately 8:30 P.M., the Plaintiff-Representatives and Plaintiffs' counsel signed the MOU.

It later emerged that, contrary to Defendants' representation and e-mail to Judge Weigel, _not_ all of the changes required by the Plaintiffs had been made. The MOU that Defendants are moving to enforce thus does _not_ reflect the agreements reached during mediation. *Compare* SMUF Exbibit 3 with Exhibit 4.

The MOU states as follows:

The Parties agree that this Summary will be used to prepare a General Settlement Agreement (as defined and described below) and an FLSA Settlement Agreement (as defined and described below) …

---

[5] Whether those payments are taxable is an issue solely between each Plaintiff and the relevant taxing authority.

[6] Plaintiffs have no way of knowing when that document was first created or first provided to the Court. We describe only our first awareness of the existence of the document.

(Dkt. 47-5 (MOU p. 2, ¶2.); SMUF Ex. 4. The Parties then began to draft these two agreements and exchanged several different drafts. Defendants added new and material terms, including but not limited to the following:

- Expanding the settlement agreement to include three (3) additional Plaintiffs[7], which in turn would require a completely new allocation of individual settlement amounts;

- Adding a new injunctive relief provision in addition to the liquidated damages clause;

- Adding new tax indemnification clauses requiring the Plaintiffs to hold Defendants' harmless for any later tax issues, including the payment of all taxes including the employer's portion.

Ultimately, the drafting process broke down because Plaintiffs refused to agree to the new terms being imposed by the Defendants, and the Defendants refused to correct the terms which were reflected in Plaintiffs' mark-up of the MOU during the mediation.

## ARGUMENT AND AUTHORITY

### I.    The MOU By Its Terms Is Not A Final, Enforceable Agreement.

The MOU by its terms is an "agreement to agree," not a final agreement. This is apparent from the document's title – "Summary of Certain Terms for Proposed Settlement." Specific language within the body of the document further demonstrates the intent to prepare a final agreement and that the MOU itself is not the final word: "[T]his Summary will be used to prepare a General Settlement Agreement (as defined and described below) and an FLSA Settlement

---

[7] Madison McDearis, Alex Bragan and Rachel Bailey.  McDearis was stricken by the Court's Order, Dk. No. 30; Alex Bragan is a male who was never a part of the sex harassment lawsuit, Civil Action No. 3:20-cv-00115-CDL, and likewise Bailey, a female former employee, was never a part of Civil Action No. 3:20-cv-00115-CDL.

Agreement (as defined and described below) …" (Dkt. 47-5 (MOU p. 2, ¶2.); SMUF Ex. 4, p.2, ¶2.)

Both Parties' post-mediation conduct further demonstrates that the MOU was not viewed, by either Party, as a final agreement. After the mediation the parties exchanged numerous drafts of the two agreements the MOU envisioned. SMUF Ex. 5, 6 and 7.

**II.    The MOU is Not Enforceable Because There Was No "Meeting of the Minds."**

Settlement agreements are analyzed under standard Georgia-law contract principles:

> As part of that existing law, settlement agreements must meet the same requirements of formation and enforceability as other contracts. (Citation and punctuation omitted.) There is no enforceable settlement between parties absent mutual agreement between them. *Id.*[8] Accordingly, an answer to an offer will not amount to an acceptance, so as to result in a contract, unless it is unconditional and identical with the terms of the offer. To constitute a contract, the offer must be accepted unequivocally and without variance of any sort. ***A purported acceptance of a plaintiff's settlement offer which imposes conditions will be construed as a counter-offer*** to the offer to settle for the policy limits.

*White v. Cheek*, 360 Ga. App. 557, 859 S.E.2d 104, 108-09 (2021) (emphasis added).

The case of *Yim v. Carr*, 349 Ga. App. 892, 827 S.E.2d 685 (2019), is illustrative. The lawsuit arose from an automobile accident. Yim filed a motion to enforce a settlement agreement allegedly entered into by Yim's insurer and Carr. Prior to the lawsuit, Carr sent Yim's carrier a time-limited settlement offer: in exchange for the policy limits, Carr would release Yim only, but not Yim's parents. Yim's insurance carrier "accepted" the offer but insisted that Yim's parents also be included as released parties. Carr's attorney responded to the carrier by rejecting its position. At trial, Yim filed a Motion to Enforce, and the trial court granted that motion holding that Yim's carrier had accepted Carr's offer. The Georgia Court of Appeals reversed the trial court's decision. The Court of Appeals held that:

---

[8] Citing *Grange Mut. Cas. Co. v. Woodard*, 300 Ga. 848, 852 (2017).

We agree with Carr that there was no acceptance and meeting of the minds, and thus no enforceable settlement agreement. Under Georgia law, an agreement alleged to be in settlement and compromise of a pending lawsuit must meet the same requisites of formation and enforceability as any other contract. In this regard, it is well settled that an agreement between two parties will occur only when the minds of the parties meet at the same time, upon the same subject matter, and in the same sense. An answer to an offer will not amount to an acceptance, so as to result in a contract, unless it is unconditional and identical with the terms of the offer. To constitute a contract, the offer must be accepted unequivocally and without variance of any sort. *Old Peachtree Partners v. Gwinnett County*, 315 Ga. App. 342, 345, 726 SE2d 437 (2012).

The Court of Appeals went on to say:

No contract exists until all essential terms have been agreed to, and the failure to agree to even one essential term means there is no agreement to be enforced." (Citation and punctuation omitted.) *Moss v. Moss*, 265 Ga. 802, 802 (463 SE2d 9) (1995). See *Moore v. Farmers Bank of Union Point*, 184 Ga. App. 86, 87 (360 SE2d 640) (1987) ("A contract must include all of the material terms; a settlement does not exist until all of the essential terms have been agreed to. OCGA § 13-3-2.").

When Yim's insurance carrier sought to expand the scope of "released parties" in Carr's offer, it was making a counteroffer. There are no "qualified acceptances" under Georgia law. A counteroffer is a rejection of the original offer. Thus, the trial court erred in holding Carr's offer to be an enforceable agreement. It is notable that Defendants here also sought to add released parties to be released –three additional Plaintiffs – after the conclusion of the mediation, which would have expanded the proposed settlement agreement and compelled Plaintiffs to reapportion the settlement funds. Under *Yim v. Carr* Defendants' move was a counteroffer and a rejection of the original offer, making the original agreement unenforceable.

In *Graco Children's Products, Inc. v. Kids II, Inc.*, Civil Action File No. 1:12-cv-03246-SCJ, (copy attached) the Honorable Steve C. Jones was faced with a similar fact pattern. The parties to a patient, trade and trademark infringement lawsuit began settlement discussions. Graco's in-house counsel emailed a settlement proposal to Kids II's in-house counsel. Kids II submitted a counterproposal. The parties went back and forth until Graco emailed Kids II: "So I

propose that we agree to $815,000 and call it a deal." Kids II agreed but reiterated some of its earlier terms.

The parties continued to exchange written proposals built around their basic understanding but with differing material terms. Eventually, Kids II sent Graco a document which they contended reflected the parties' email exchange above. Graco disagreed, saying that two of the issues it insisted upon were crucial. Kids II filed a Motion to Enforce.

Judge Jones began his analysis by noting that federal courts have the inherent power to enforce settlement agreements of the parties before them and that the moving party has the burden of proving both (1) the existence of the binding agreement and (2) its terms. *Id*. at 4, citing *Massih v. Mulling*, 271 Ga. App. 685, 687, 610 S.E.2d 657, 659 (2005). As with *Yim v. Carr*, Judge Jones noted that "[A] purported acceptance of a settlement offer that imposes conditions or otherwise varies the offer is construed as a counteroffer." (Quoting *DeRossett Enters., Inc. v. Gen. Ele. Capital Corp*., 275 Ga. App. 728, 729, 621 S.E.2d 755, 757 (2005).) Judge Jones denied the Motion to Enforce.

Here, LRG's insistence upon new, material terms constitute a counteroffer. In particular, insisting that three new Plaintiffs be included in the General Settlement Agreement allocation completely upends the Parties' understanding reached in mediation. Adding these new Plaintiffs to the settlement allocation after mediation requires a total reallocation of all settlement funds between the Plaintiffs. LRG has made a counteroffer: there is no agreement for them to ask the Court to enforce.

### III.   **Defendants' Proposed "Agreement" Could Never Be Approved Under *Lynn's Food*.**

In this Circuit all FLSA litigation must comply with the Court of Appeal's holding in *Lynn's Food Stores, Inc. v. U.S.,* 679 F.2d 1350 (11th Cir. 1982) and secure Court approval. To

gain that approval an agreement must be fair and transparent, submitted in a stipulated judgment, and may not impose a confidentiality requirement. The heavily redacted documents that Defendants submit to the Court flunk the *Lynn's Food* test.

The MOU cannot be approved under *Lynn's Food Stores* for the following reasons:

1.    It does not contain the necessary data for the Court to determine if the back pay awards are related to the Plaintiffs' claims. In fact, the MOU contains none of the data an employee-plaintiff would provide to articulate his/her wage claims at all;

2.    The MOU does not describe the Plaintiffs' claims or LRG's defenses in any manner;

3.    The MOU does not describe how attorneys' fees were determined;

4.    The MOU does contain a pervasive release;

5.    The MOU does contain a covenant not to sue;

6.    The MOU does contain a non-publicity provision;

7.    The MOU does contain a non-disparagement clause;

8.    The MOU does contain a confidentiality clause; and

9.    The MOU does contain a clause requiring no future employment.

The MOU was never meant to be a binding agreement in this complex, multi-party, multi-cause of action, multi-count set of lawsuits; it was a "summary of certain terms," a memorandum of understanding to guide the Parties in drafting their actual Settlement Agreements. In turn, those Settlement Agreements were to be the correct, accurate, *Lynn's Food Stores*-complaint agreements that would have been submitted to the Court for approval.

Lynn's Food Stores, Inc. was sued for FLSA violations and sought to enforce settlement agreements it reached with its employees. The U.S. Department of Labor had found that Lynn's

Food Stores had violated FLSA's provisions governing minimum wages and overtime and had violated the record-keeping requirements of the Act. As a result, the Department of Labor determined that Lynn's was liable to its employees for back wages and liquidated damages. After the employer's unsuccessful attempts to negotiate a settlement with the Department of Labor, Lynn's approached its employees directly in an attempt to resolve the back wage claims. Specifically, Lynn's offered its employees $1,000.00, <u>collectively</u>, in exchange for each employee's agreement to waive "on behalf of himself (herself) and on behalf of the U. S. Department of Labor" any claim for compensation arising under the FLSA.

Approximately fourteen of Lynn's employees signed the agreements, thereby accepting a portion of the $1,000.00 in exchange for back wages which, according to U.S. Department of Labor, totaled more than $ 10,000.00. Lynn's then brought a declaratory action in district court seeking judicial approval of the settlement. In response, the Department of Labor argued that the settlements could have no effect in releasing the employer from liability under the FLSA. The U.S. District Court for the Southern District of Georgia agreed with the Department of Labor and dismissed the action on the grounds that the settlements violated the provisions and policies of the FLSA. The Court of Appeals for the Eleventh Circuit affirmed.

The Court of Appeals held that there are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employees. First, under 29 U.S.C. §216(c), the Secretary of Labor is authorized to supervise payment to employees of unpaid wages owed to them. Second, "when *employees* bring a private action for back wages under the FLSA, *and present* to the district court *a proposed settlement*, the district court may enter *a stipulated judgment* after *scrutinizing the settlement for fairness*." *Id*. at 1353 (emphasis added); see also *Bolden v. All Care Home Health, LLC*, 2021 U.S. Dist. LEXIS 116817 (M.D. Ga. June 23, 2021).

00437287

11

Thus, under the FLSA and *Lynn's Food*, a court may (1) enter a stipulation under FRCP 41 (2) after the employees (3) present a proposed settlement (4) after conducting a fairness analysis. FRCP 41(a) states:

(a) Voluntary Dismissal.

(1) *By the Plaintiff.*

(A) *Without a Court Order.* Subject to Rules 23(e), 23.1(c), 23.2, and 66 and any applicable federal statute, the plaintiff may dismiss an action without a court order by filing:

(i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; or

(ii) a stipulation of dismissal signed by all parties who have appeared.

(B) *Effect.* Unless the notice or stipulation states otherwise, the dismissal is without prejudice. But if the plaintiff previously dismissed any federal- or state-court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits.

(2) *By Court Order; Effect.* Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper. If a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication. Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice.

Nothing in the language of FRCP 41(a) – dealing with stipulations of dismissal – provides a mechanism whereby an employer can force any compromise of an employee's rights under the FLSA.[9] In other words, there can be no "forced settlements" under *Lynn's Food Stores* such as Defendants are asking this Court to order. The Defendants' Motion to Enforce should be denied on this basis alone.

The Court of Appeals has only revisited *Lynn's Food Stores* a handful of times since 1982. The Court did so in *Nall v. Mal-Motels, Inc.*, 723 F.3d 1304 (11th Cir. 2013). In *Nall*, the Court of

---

[9] FRCP 41(a) is inapplicable under *Lynn's Food*; FRCP 41(b) is not a stipulation of dismissal.

Appeals extended the reasoning of *Lynn's Food Stores* to lawsuits between employers and their

*former* employees. *Id*. at 1307. More importantly, the Court touched upon just how a compromised

resolution in a FLSA lawsuit is reached under *Lynn's Food Stores*:

> Having decided that the *Lynn's Food* requirements apply here, the next question is
> whether the settlement in question met them. It is not a difficult question. The
> agreement between Nall and Malik was not made under the supervision of the
> Secretary of Labor, so it is valid only if the district court entered a "stipulated
> judgment" approving it. *Lynn's Food*, 679 F.2d at 1352-54. The court did enter a
> judgment approving the settlement, but it was not a stipulated one. *Lynn's Food* did
> not define the term "stipulated judgment," and we do not have any decisions
> defining it in this context. ***But it takes two (or more) to stipulate, and a judgment
> to which one side objects is not a stipulated one***.

*Nall*, 723 F.3d at 1308 (emphasis added).[10]

In *Dowling v. Athens Ahmed Family Rest., Inc*., 2009 U.S. Dist. LEXIS 36051, 2009 WL

1158852 (M.D. Ga. Apr. 28, 2009), this Court dealt with a similarly messy alleged settlement of a

FLSA action. Simply put, the plaintiffs brought suit against their restaurant employer, fired their

attorney, received their alleged back wages from the employer, and the employer sought to dismiss

the plaintiffs' claims on this basis. The plaintiffs resisted, urging this Court to not enter a stipulated

judgment under *Lynn's Food Stores*. This Court, citing *Lynn's Food Stores*, held:

> Recognizing the unequal bargaining power between an employer and its
> employees, Eleventh Circuit precedent provides that the FLSA does not authorize
> private settlements between employers and employees. *Lynn's Food Stores, Inc.,*
> 679 F.2d at 1353 n.7. Therefore, claims in this case arising under the FLSA can
> only be settled or compromised by approval of the Court. *Id*. at 1353. Thus, *if a
> settlement agreement* has been reached between Defendants and Smith and Scott,
> *the parties* must submit a copy of the agreement for judicial approval. Until then,
> Scott's and Smith's FLSA claims remain pending.

*Dowling* at 9 & 10 (Emphasis added).

---

[10] Defendants will no doubt argue that the Plaintiffs here were represented by counsel during the
mediation. That misses the mark: the question is whether the MOU accurately represented the
Parties' agreement. The Plaintiffs contend it does not. That should end the inquiry under *Lynn's
Food Stores* – the Plaintiffs should not be required to stipulate to a dismissal which they contend
does not reflect their agreed-to compromise of their protected rights under the FLSA.

The lesson of *Lynn's Food* is that the Court cannot force employees or former employees to compromise their rights under the FLSA. The appropriate mechanism is a joint motion for court approval; that is the best mechanism for the Court to decide if the employee's rights have been legitimately and fairly compromised in exchange for a reasonable, rational settlement.

Defendants' proposed agreement has additional fatal flaws. In *Lynn's Food* the Court of Appeals held that there are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employees: first, under the supervision of the Secretary of Labor; and second, "when employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment *after scrutinizing the settlement for fairness*." *Id*. at 1353 (emphasis added). See also *Bolden v. All Care Home Health, LLC*, 2021 U.S. Dist. LEXIS 116817 (M.D. Ga. June 23, 2021).

What does "scrutinizing the settlement for fairness" actually mean? This lengthy but worthwhile quote from *Bolden v. All Care Homes Health*, LLC, 2021 U.S. Dist. LEXIS 116817 (M.D. Ga. June 23, 2021) explains:

> As another court explained, reviewing a FLSA settlement for fairness requires that the parties requesting review of an FLSA compromise must provide enough information for the court to examine the bona fides of the dispute. The parties' motion (or presentation at a hearing) must describe the nature of the dispute (for example, a disagreement over coverage, exemption, or computation of hours worked or rate of pay) resolved by the compromise. Parties wishing to compromise a coverage or exemption issue must describe the employer's business and the type of work performed by the employee. The employer should articulate the reasons for disputing the employee's right to a minimum wage or overtime, and the employee must articulate the reasons justifying his entitlement to the disputed wages. If the parties dispute the computation of wages owed, the parties must provide each party's estimate of the number of hours worked and the applicable wage. In any circumstance, the district court must ensure the bona fides of the dispute; implementation of the FLSA is frustrated if an employer can extract a disproportionate discount on FLSA wages in exchange for an attenuated defense to payment.

*Id.* quoting *Dees v. Hydradry, Inc.,* 706 F. Supp. 2d 1227, 1241-42 (M.D. Fla. 2010); *see also*

*Brown v. Refuse Materials*, 2014 U.S. Dist. LEXIS 5160 (M.D. Ga., Jan. 15, 2014) (court required

parties to provide detailed information before it would rule on the motion), *Nichols v. Dollar Tree*

*Stores, Inc*., 2013 U.S. Dist. LEXIS 156754, 2013 W.L. 5933991 (M.D. Ga., Nov. 1, 2013) (same

requirement before approval).

This Court has found a number of common settlement agreement clauses to be

unacceptable in a *Lynn's Food*-governed agreements:

1.    pervasive releases;[11]

2.    a covenant not to sue;[12]

3.    non-publicity provisions;[13]

4.    non-disparagement clauses;[14]

5.    confidentiality clauses;[15] and,

6.    no future employment.[16]

Additionally, merely asking the Court to seal the proposed agreement[17] – or in this case, the MOU

– strongly suggests that it contains terms that are not acceptable.

---

[11] *Fields v. Southcare Med. & Homecare Servs., LLC*., 2019 U.S. Dist. LEXIS 93758 (M.D. Ga. Jan. 6, 2019); *Engledow v. Houston Lake Funeral Home, LLC*, 2019 U.S. Dist. LEXIS 92762, 2019 WL 2358404 (M.D. Ga. June 4, 2019); *Nichols v. Dollar Tree Stores, Inc*., 2013 U.S. Dist. LEXIS 156754, 2013 W.L. 5933991 (M.D. Ga., Nov. 1, 2013); *Webb v. CVS Caremark Corp*., 2011 U.S. Dist. LEXIS 147989, 2011 W.L. 6743284 (M.D. Ga., Dec. 23, 2011).
[12] *Id*.
[13] *Id*.
[14] *Id*.
[15] *Johnson v. Phil J. Sheridan Co*., 2018 U.S. Dist. LEXIS 238816 (M.D. Ga., Apr. 3, 2018); *Brown v. Refuse Materials*, 2014 U.S. Dist. LEXIS 5160 (M.D. Ga., Jan. 15, 2014); *Nichols v. Dollar Tree Stores, Inc*., 2013 U.S. Dist. LEXIS 156754, 2013 W.L. 5933991 (M.D. Ga., Nov. 1, 2013); *Webb v. CVS Caremark Corp*., 2011 U.S. Dist. LEXIS 147989, 2011 W.L. 6743284 (M.D. Ga., Dec. 23, 2011).
[16] *Nichols v. Dollar Tree Stores, Inc*., 2013 U.S. Dist. LEXIS 156754, 2013 W.L. 5933991 (M.D. Ga., Nov. 1, 2013).
[17] Defendants' Motion to Seal (Dkt. 53) is addressed in a separate pleading.

The MOU that Defendants ask this court to enforce is wildly non-complaint with the requirements of *Lynn's Food Stores* and could never earn Court approval. Because *Lynn's Food* mandates that any settlement must, *inter alia*, be voluntary it is impossible for a motion to enforce an FLSA settlement agreement to be granted. Even if it did not contain so many provisions that are contrary to *Lynn's Food*, the MOU could not be transformed into two enforceable settlement agreements simply by duplicating it, redacting lengthy portions of each version, and then submitting the FLSA-related slice to the Court for approval.

Defendants drafted the MOU, and documents generally are construed against their drafters: the old *contra proferentem* principle is still alive today, and states that ambiguities in a contract should be construed against the drafter. *Calderon v. Sixt Rent a Car, LLC*, 29 Fla. L. Weekly Fed. C 45 (U.S. 11th Cir. 2021). The Defendants chose to use a single MOU to resolve the FLSA, FMLA, Title VII and state tort claims. They cannot make an end-run around *Lynn's Food* by asking the Court to enforce their "summary of certain terms of proposed settlement" as if it were a *bona fide,* consensual agreement to settle Plaintiffs' claims.

**IV.    The Parties' Behavior Shows Neither Intend the MOU to be the Final Agreement.**

As the Defendants acknowledge, analyzing the parties' course of conduct is a method Georgia courts use to determine if the parties truly had a full and final agreement on all material terms. In this case, if the MOU were an enforceable agreement in itself, then (1) why does it contemplate that the Parties will draft an FLSA Agreement and a separate General Agreement and (2) why did the Parties spend roughly three (3) weeks attempting to do so?

In *Graco* Judge Jones discussed the appeal of enforcing what we would call here the "memorandum of understanding:" the parties' stated willingness to settle the case and their broad outline as to the terms (as shown by their emails in *Graco*). The problem in *Graco*, as here, is that

the parties' subsequent settlement agreement drafts both differed and disagreed on material terms. It was not until the parties began drafting the settlement agreement that they found themselves at odds, and more importantly, became aware that they did ***not*** have a meeting of the minds. "Only when a meeting of the minds exists will an agreement be formed." *Graco* at 10 (citing *Greenwald v. Kersh*, 275 Ga. App. 724, 726, 621 S.E.2d 465, 467 (2005) in turn quoting *Vildibill v. Palmer Johnson of Savannah, Inc*., 244 Ga. App. 747, 748, 536 S.E.2d 779 (2000)).

If the Parties here had intended the MOU to be their binding agreement, surely they would not have spent three weeks trying to craft two separate settlement and release agreements. The MOU itself calls for the drafting those two Agreements and for the submission of the FLSA Settlement Agreement to the Court. LRG is ignoring the plain language of the MOU itself. Additionally, the Parties spent approximately three weeks exchanging drafts of the Settlement Agreements which contained new terms that differed from the MOU. That course of conduct cannot be reconciled with Defendants' new position that the MOU is the "final" agreement that this Court should enforce.

**V.    The MOU is Not a Voluntary and Knowing Waiver Under Title VII.**

While a relatively minor issue, it is difficult to conclude that the MOU constitutes a "voluntary and knowing waver" of the Plaintiffs' federal civil rights where the Plaintiffs contend the MOU (either deliberately or through mistake) does not reflect the edits they gave Defendants before signing. In order to be effective, a waiver of federal discrimination claims under Title VII must be:

(1) knowingly and voluntarily signed;

(2) offer consideration, such as additional compensation, in exchange for   the

waiver of the right to sue; and

(3) not require the employee to waive future rights.

The Court of Appeals, in *Freeman v. Motor Convoy, Inc.*, 700 F.2d 1339 (11th Cir. 1983), said:

> A waiver of remedial rights must be closely scrutinized. *Watkins v. Scott Paper Co.*, 530 F.2d 1159, 1172-73 (5th Cir.1976). In evaluating the validity of such a waiver, the court must determine whether the employee's consent to the settlement agreement was knowing and voluntary. *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 52 & n. 15, 94 S. Ct. 1011, 1021, 39 L. Ed. 2d 147, 160 1974); *Fulgence v. J. Ray McDermott & Co.*, 662 F.2d 1207, 1209 (5th Cir.1981); *United States v. Trucking Employers Inc.*, 182 U.S. App. D.C. 315, 561 F.2d 313, 318 (D.C. Cir.1977). The court should beware of ***any evidence*** of fraud or coercion. *Fulgence v. J. Ray McDermott & Co.*, supra at 1209. Contrarily, if an employee voluntarily releases his employer from liability with a full understanding of the terms of the settlement agreement, he is bound by the terms of the agreement. *Lyles v. Commercial Lovelace Motor Freight, Inc.*, 684 F.2d 501, 504 (7th Cir.1982); *Fulgence v. J. Ray McDermott & Co.*, supra at 1209; *Watkins v. Scott Paper Co.*, supra at 1172 n. 19.

700 F.2d at 1741 (emphasis added). Furthermore, as the Court held in *Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1124 (11th Cir. 2014) (FMLA lawsuit):

> We have said that employees can waive employment claims when their waiver is "voluntary and knowing based on the totality of the circumstances." *Myricks v. Fed. Reserve Bank of Atlanta*, 480 F.3d 1036, 1040 (11th Cir. 2007). Specifically, we consider (1) the education and business experience of the employee; (2) the time the employee spent considering the agreement before signing it; (3) the clarity of the language in the agreement; (4) the employee's opportunity to consult with an attorney; (5) whether the employer encouraged or discouraged consultation with an attorney; and (6) the consideration given    in exchange for the release compared to the benefits the employee was already entitled to receive. *Id*.

Here, there is undeniable evidence that the Plaintiffs marked up the MOU before signing, that their edits were not included in the final version despite Defendants' assurances that they would be, and that they were misled by defense counsel into believing that those edits had in fact been made. The MOU, under these circumstances, does not constitute a "voluntary and knowing waiver" and thus is not an enforceable waiver of any Plaintiffs' rights under any federal civil rights statute.

This is relatively complex litigation: ten (10) Plaintiffs, four (4) Defendants, two (2) separate lawsuits one of which is a consolidated matter, and at least four (4) different causes of

action. Defendants chose to seek a global resolution of all claims under all causes of action for all Plaintiffs in both lawsuits. That is a rational decision, but it is one that has consequences. If a party desires a global, unified resolution, then it must submit to the Court a global, unified settlement agreement. If that agreement calls for the waiver and release of FLSA claims it also must comply with *Lynn's Food* in this Circuit. On the other hand, these two lawsuits could have been resolved with two completely separate agreements, even separate negotiations. Having made the decision to pursue a global settlement the Defendants cannot have it both ways. The redaction of the MOU to produce a *Lynn's Food*-complaint FLSA settlement plus a side-agreement to settle the Title VII claims smacks of the very type of subterfuge that the FLSA abhors. A global resolution was not impossible.[18]   But having chosen to pursue a global resolution Defendants pledged to present a global settlement agreement and failed.

## VI.    Ms. Singleton Has Done Nothing to Warrant Sanctions.

Defendants ask this Court to punish Plaintiff Keela Singleton in some unspecified manner for publishing a social media post about her experience at mediation and the subsequence behavior of the Defendants. It is a blatant violation of *Lynn's Food Stores* to seek sanctions against a litigant in a FLSA lawsuit for publicly discussing her case. As described in detail above, confidentiality clauses, no-disparagement clauses, and non-publicity clauses all have been prohibited by the Court in earlier cases. Ironically, though she could have done, Ms. Singleton did not disclose the operative terms of the mediation; she was only expressing her entirely understandable frustration with the process. The Court should deny the Motion for Sanctions against Ms. Singleton.

---

[18] In *Cox v. Classic City Roasters, Inc., et. al.*, Civil Action File No. 3:20-CV-00031-CAR, the Honorable Charles H. Weigle helped the parties settle a similar, albeit smaller lawsuit. The plaintiff had brought claims under the FLSA, Title VII and COBRA/ERISA. The parties in that case submitted a single, unified, *Lynn's Food Stores*-complaint settlement agreement to the Court, which had no problem approving the agreement. This is not the only possible method of resolving such multi-faceted lawsuits.

**VII.    Defendants' Motion for Sanctions against Plaintiffs and their Counsel is frivolous.**

Having chosen to go down this road – choosing a global settlement, unilaterally drafting the MOU, not making the changes requested by Plaintiffs' counsel during mediation and then lying about it, refusing to even discuss the problems Plaintiffs have with the mechanics of the proposed settlements (not the terms or the sums to be paid), and finally insisting upon new material terms – the Defendants claim that the Plaintiffs are being "stubbornly litigious" and acting in bad faith.

"Federal courts possess certain 'inherent powers,' not conferred by rule or statute, 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. _____, 137 S.Ct. 1178, 1186 (2017) (citing *Link v. Wabash R. Co.,* 370 U.S. 626 630-631 (1962). "That authority includes 'the ability to fashion an appropriate sanction for conduct which abuses the judicial process.'" *Id*. (citing <u>Chambers</u> at 44-45). When a sanction goes beyond compensatory to punitive, '[t]o level that kind of separate penalty, a court would need to provide procedural guarantees applicable in criminal cases, **such as a 'beyond a reasonable doubt' standard of proof.**" (Emphasis added.) *Id*. (citing *Mine Workers v. Bagwell*, 512 U.S. 821, 826, 832-834, 838-839 (1994).

Addressing the issue in a slightly different way, the Court of Appeals for the Eleventh Circuit held: "[a] court may exercise this power [to police those appearing before them] 'to sanction the willful disobedience of a court order, and to sanction a party who has acted in bad faith, vexatiously, wantonly or for oppressive reasons.'" *Purchasing Power, LLC v. Bluestream Brands, Inc.,* 851 F.3d 1218, 1223 (11th Cir. 2017) (citing *Marx v. Gen. Revenue Corp.,* 568 U.S. _____, 133 S.Ct. 1166, 1175 (2013).) "The key to unlocking a court's inherent power is a finding of bad faith." *Id*. (citing *Sciarretta v. Lincoln Nat'l Life Ins.*, 778 F.3d 1205, 1212 (11th Cir. 2015).) The Court of Appeals added that [t]his power 'must be exercised with restraint and discretion' and

used 'to fashion an appropriate sanction for the conduct which abuses the judicial process.'" *Id*. (citing *Chambers* at 44-45.) The ultimate question, as posed by the Court of Appeals, is whether the conduct in question "abuse[d] the judicial process.'" *Id*. (citing *Chambers* at 45). "The standard is a subjective standard with a narrow exception for conduct tantamount to bad faith." *Id*.

The Defendants come nowhere close to showing that either the Plaintiffs or their Counsel have acted in "bad faith, vexatiously, wantonly or for oppressive reasons." To be blunt, the Defendants had obtained a great resolution at the conclusion of the mediation which they then proceeded to destroy by: (1) misstating the Parties' actual agreement in their partisan MOU; (2) refusing to make the changes requested by Plaintiffs and then lying about doing so; and (3) insisting upon new terms in the FLSA Settlement Agreement and General Settlement Agreement.

## CONCLUSION

Plaintiffs worked diligently to resolve the issues raised in their edits to the MOU which, for whatever reason, were not incorporated into the final, signed version. The MOU was no final agreement, and the redacted documents Defendants have submitted to the Court would never pass muster under *Lynn's Food*: indeed, that case precludes any forced settlement at all. The additional provisions Plaintiffs sought were related to tax and *Lynn's Food* issues and would not have increased the cost of this settlement to the Defendants by one penny, which makes Defendants' refusal to consider them look punitive. In contrast, the changes proposed by Defendants – such as adding three additional Plaintiffs to the General Settlement – would have required a total reallocation of settlement funds between all the Plaintiffs, necessarily resulting in a decrease in the amount available for each. Nothing could be more fundamental or material. The Defendants insisted upon total freedom to impose new terms and conditions, but adamantly refused even to discuss the legitimate concerns of the Plaintiffs. The Defendants' Motion to Enforce and Motion for Sanctions should be denied.

00437287

Respectfully submitted this 10th day of November 2021.

/s/ J. Larry Stine
J. Larry Stine
Georgia Bar No. 682555

WIMBERLY LAWSON STECKEL SCHNEIDER
 & STINE, P.C.
3400 Peachtree Rd., N.E.
Suite 400 – Lenox Towers
Atlanta, Georgia 30326
(404) 365-0900
Email: jls@wimlaw.com

/s/ Peter H. Steckel
Peter H. Steckel
Georgia Bar No. 491936

STECKEL LAW, L.L.C.
1120 Ivywood Drive
Athens, GA 30606
(404) 717-6220
Email: peter@SteckelWorkLaw.com

*Counsel for Plaintiffs*