**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ATHENS DIVISION**

| | | |
|---|---|---|
| **MADISON McDEARIS,** *et al.*, | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| v. | : | **Case No. 3:20-cv-93-CDL** |
| | : | |
| **LAST RESORT GRILL,** *et al.*, | : | |
| | : | |
| **Defendants.** | : | |
| —————————————— | : | |
| | : | |
| **ALMA KAEMPF,** *et al.*, | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| v. | : | **Case No. 3:20-cv-139-CDL** |
| | : | **(Docket in Case No. 3:20-cv-93)** |
| **LAST RESORT GRILL,** *et al.*, | : | |
| | : | |
| **Defendants.** | : | |
| —————————————— | : | |
| | : | |
| **RACHAEL MILLS,** *et al.*, | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| v. | : | **Case No. 3:20-cv-115-CDL** |
| | : | |
| **LAST RESORT GRILL,** *et al.*, | : | |
| | : | |
| **Defendants.** | : | |
| —————————————— | : | |

## <u>RECOMMENDATION ON MOTION TO ENFORCE SETTLEMENT AGREEMENT</u>

On September 1, 2021, the undersigned United States Magistrate Judge conducted a mediation of the three above-captioned cases, which concluded with an agreement to settle all matters, memorialized in an eight page "Summary of Certain Terms of Proposed Settlement"

("Summary of Terms"), signed by all necessary parties and by their attorneys. The parties now dispute the terms and the enforceability of the settlement agreement. Defendants have filed a motion to enforce the settlement agreement (Doc. 52/47) [1], alleging that Plaintiffs have refused to honor the terms of the agreement, and the District Court has referred that motion to the undersigned for a recommendation.

In their response (Doc. 61/56), Plaintiffs contend that there is no agreement. They argue in opposition that the 8-page Summary of Terms, completed at the conclusion of nearly ten hours of intense negotiation (following a previous unsuccessful mediation before a private mediator) and signed by no less than four lawyers and six parties, is merely a "Memorandum of Understanding," an "agreement to agree" pending further negotiation. In the alternative, Plaintiffs argue that the written Summary of Terms does not reflect the parties' actual agreement because Defendants' counsel surreptitiously "failed to make several important changes … that were required by the Plaintiffs and that they had agreed to make during the mediation." (Doc. 61/56, p. 2). As a second alternative, Plaintiffs argue that the agreement would be unenforceable under the holding in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982), which requires judicial approval of agreements to settle claims under the Fair Labor Standards Act. As a final alternative, Plaintiffs contend that Defendants "inserted new, material terms in the draft FLSA Settlement Agreement and General Settlement Agreement that were never discussed at mediation" and that these changes "constitute a counteroffer under Georgia law, precluding enforcement." (Doc. 61/56, p. 3).

All four of Plaintiffs' arguments are without merit. Under Georgia contract law, the summary of terms signed by the parties and their attorneys at the mediation is a complete

---

[1] All record citations in this Order refer first to documents in Case No. 3:20-cv-93-CDL, second to documents in Case No. 3:20-cv-115-CDL. The documents filed in both cases are substantially the same, although filed with different document numbers. Case No. 3:20-cv-139-CDL was consolidated with Case No. 3:20-cv-93-CDL and was administratively closed on May 10, 2021.

agreement and an enforceable contract. The terms of the written contract, negotiated at arms' length by sophisticated attorneys, cannot be altered by parol evidence, and the parol evidence that Plaintiffs seek to introduce does not support Plaintiffs' desired construction of the contract. The agreement specifically contemplated that the terms of settlement of the FLSA claims would be subject to approval by the District Court, and it is the responsibility of the District Court, not Plaintiffs' attorneys or the mediator, to determine whether the settlement agreement is consistent with the requirements of the decision in *Lynn's Food Stores*. Finally, the disputes that Plaintiffs identify as to execution of the final Settlement Agreement documents do not nullify or void the agreement, but are matters subject to resolution by the mediator, as specified in the Summary of Terms. Accordingly, as set forth more fully below, it is **RECOMMENDED** that Defendants' Motion to Enforce the Settlement Agreement (Doc. 52/47) be **GRANTED**.

### 1.  The Settlement Agreement is a Complete and Enforceable Contract

The settlement agreement reached on September 1, 2021, as memorialized in the written and signed Summary of Terms, is a complete agreement and is enforceable under Georgia law. Federal courts look to state contract law to construe and enforce settlement agreements. *Moore v. Camden Property Trust*, 816 F.App'x. 324, 331 (11th Cir. 2020). There is no dispute that the applicable state in this case is Georgia, as specified in Paragraph 10 of the Summary of Terms.

Under Georgia law, a settlement agreement is interpreted and enforced as an ordinary contract. A settlement agreement "must meet the same requirements of formation and enforceability as other contracts" and must show "a meeting of the minds." *Lamb v. Fulton-DeKalb Hosp. Auth.*, 297 Ga. App. 529, 533 (2009) (quoting *Greenwald v. Kersh*, 275 Ga. App. 724, 726 (2005)). A settlement agreement is subject to the usual rules of contract construction. "While the cardinal rule of construction is to determine the intent of the parties, no construction is

required or permitted when the language employed by the parties in the contract is plain, unambiguous, and capable of only one reasonable interpretation." *Id.* (quoting *City of Demorest v. Roberts & Dunahoo Properties*, 288 Ga. App. 708, 711-12 (2007)). "The construction of the provisions of a written contract is generally a matter for the trial court to decide as a matter of law." *Neely Dev. Corp. v. Service First Investments*, 261 Ga. App. 253, 255 (2003).

Like any contract, a settlement agreement must show a meeting of the minds as to all essential terms:

> the parties must agree on all material terms, and those terms cannot be incomplete, vague, uncertain or indefinite. In considering whether a contract is unenforceable, however, a trial court must bear in mind that the law leans against the destruction of contracts on the ground of uncertainty, and the uncertainty and indefiniteness at issue must be "extreme" to warrant the conclusion that a contract cannot be enforced.... It is unnecessary that a contract state definitively and specifically all facts in detail to which the parties may be agreeing, but as to such matters, it will be sufficiently definite and certain if it contains matters which will enable the courts, under proper rules of construction, to ascertain the terms and conditions on which the parties intended to bind themselves. **This is particularly true with respect to settlement agreements, which are highly favored under the law and will be upheld whenever possible as a means of resolving uncertainties and preventing lawsuits.**

*Mori Lee v. Just Scott Designs, Inc.*, 325 Ga. App. 625, 629-30 (2014) (quoting *Triple Eagle Assoc., Inc. v. PBK, Inc.*, 307 Ga. App. 17, 19-20 (2010)) (emphasis added). Essential terms of a contract include the subject matter and purpose of the contract, the identity of the parties, and the consideration." *Steele v. Steele*, 298 Ga. 548, 549 (2016). Although a contract must evidence agreement on all essential terms, "a deferral of agreement on a nonessential term does not invalidate an otherwise valid contract." *Goobich v. Waters*, 283 Ga. App. 53, 56 (2006). In

*Goobich*, for example, the court held that "the fact that an agreement to purchase and sell real estate contains contingencies, such as the securing of financing, does not allow a seller to escape that agreement when a better deal materializes or second thoughts arise." *Id.* In *Steele*, the court held that items not addressed in a settlement agreement, including "the time frame for execution of the written agreement and approval by the trial court and the 'method for presentation' of the agreement to the court" were not essential to the formation of a binding agreement and related "only to non-essential procedural matters, not to the substance of the parties' rights and obligations." 298 Ga. at 549.

The Summary of Terms, signed by all attorneys and all parties present at the conclusion of the mediation in this case, represents a complete and enforceable agreement and shows a meeting of the minds as to all essential terms of the settlement agreement. The Summary is eight pages long and includes twelve paragraphs. Every paragraph is phrased in terms of agreement and obligation – "the Parties agree," "the Parties shall," "this Summary will be used," "the Settlement Amount shall be allocated," "Plaintiffs will file," "Plaintiffs will execute," "Defendants shall be entitled," and so on. In other words, every sentence of the Summary makes clear that the parties have entered into a binding agreement with obligations on both sides.

The most material portions of the agreement relate to the settlement amount, and the Summary is very specific as to the total settlement amount and as to its apportionment and taxability. Paragraph 3 of the Summary states the "all-in settlement amount" for all claims, allocating a portion of that settlement amount toward the FLSA claims in Case No. 3:20-cv-93-CDL and a portion toward the Title VII and tort claims in Case No. 3:20-cv-139-CDL and Case No. 3:20-cv-115-CDL. Paragraph 4 further allocates the specific portion of the settlement amounts to be paid to the Plaintiffs. As to the FLSA claims, Paragraph 4 provides that 50% of each

settlement payment "will be treated as payment for claims for wage-based damages claims and subject to all appropriate taxes and deductions," while the remaining 50% of each payment "will be treated as payment for liquidated damages, and an IRS Form 1099 Misc will be issued for that amount." As to the Title VII and FMLA claims, Paragraph 4 provides that 50% of each payment "will be treated as payment for claims for wage-based damages claims and subject to all appropriate taxes and deductions," while the remaining 50% "will be treated as payment for non-wage damages claims, and an IRS Form 1099 Misc will be issued for that amount." Paragraph 5 of the Summary of Terms provides for allocation of a specified portion of the settlement amounts to attorneys' fees, further specifying which portion of the attorneys' fees amount would be applied to the FLSA claims and which portion of the settlement amount would be applied to the Title VII and FMLA claims.

This specific apportionment of the settlement amount was necessary not only because certain portions of the award would be taxable income while other portions would not, but also because the settlement of the FLSA claims was subject to approval by the District Court while settlement of the Title VII and tort claims was not. In connection with the requirement of Court approval, the Parties agreed in Paragraph 2 that they would "take reasonable steps necessary to obtain the Court's approval of the proposed settlement of the FLSA lawsuit." The Parties further agreed in Paragraph 2 that in the event the Court should decline to approve the settlement, the Parties "shall work together cooperatively in good faith to reallocate the Settlement Amount . . . so that the Court will approve the FLSA Settlement."

It is difficult to imagine any "essential term" that has been left out of this agreement, and the Plaintiffs have not actually identified any missing terms. Instead, Plaintiffs argue that the title of the written document, "Summary of Certain Terms for Proposed Settlement," indicates that it

was not a final agreement and that the Summary itself contemplates the drafting of two separate final agreements. Paragraph 2 of the Summary provides, "The Parties agree this Summary will be used to prepare a General Settlement Agreement (as defined and described, below) and an FLSA Settlement Agreement (as defined and described, below)." The General Settlement Agreement and FLSA Settlement Agreement are defined and described, in some detail, in Paragraph 7 of the Summary. Paragraph 7.1 sets out numerous specific details for the General Settlement Agreement, in four subparagraphs. Paragraph 7.2 details the essential aspects of the FLSA Settlement Agreement in six subparagraphs. The Summary is quite detailed about what the final settlement agreements will include and about what the Parties must do in the event the District Court does not approve the settlement of the FLSA claim.

The fact that the Summary leaves to the future the drafting of these final settlement agreements does not make it an "agreement to agree." Drafting of these final settlement documents, described in considerable detail, was simply part of Plaintiffs' performance obligation under the contract. "[T]he drafting of documents necessary to effectuate the settlement may have been a condition of the performance but it was not an act necessary to acceptance of the offer to settle." *Pourreza v. Teel Appraisals & Advisory, Inc.*, 273 Ga. App. 880, 883 (2005) (quoting *Grange Mutual Casualty Co. v. Kay*, 264 Ga. App. 139, 142 (2003)). As the court noted in *Goobich*, cited above, the fact that the agreement contemplated certain contingent actions to execute the contract "does not allow a [party] to escape that agreement when a better deal materializes or second thoughts arise." *Goobich*, 283 Ga. App. at 56.

**2. The Terms of the Agreement, as Stated in the Written Summary of Terms, Cannot be Altered by Parol Evidence**.

Plaintiffs' next argument is that the written Summary of Terms does not reflect the actual terms of the agreement because Defendants' counsel "lied" or "misled" Plaintiffs' counsel into believing that certain edits had been made to the final draft of the Summary that were not in fact made. This argument amounts to an effort to use parol evidence to alter the terms of a written agreement. Under Georgia law, "it is well settled that parol negotiations preceding the making of a written contract are merged in the written contract, and parol evidence is inadmissible to vary or contradict the terms of a written contract which is valid on its face." *LNV Corp. v. Studle*, 322 Ga. App. 19, 21 (2013). Where the terms of a written contract are ambiguous, however, courts "may consider all the attendant and surrounding circumstances to explain the ambiguity." *H & E Innovation, LLC v. Shinhan Bank America, Inc.*, 343 Ga. App. 881, 887 (2017) (quoting *CareAmerica v. Southern Care Corp.*, 229 Ga. App. 878, 881 (1997)). Plaintiffs have not identified any ambiguous provision in the Summary of Terms. Instead they seek to alter the terms of the agreement based on a claim that Defendants tricked them into signing a document that did not reflect their agreement.

The evidence Plaintiffs present does not support Plaintiffs' contention that Defendants' counsel misled or lied to Plaintiffs' counsel about amendments to the draft agreement. Plaintiffs argue that their Exhibit 3 (Doc. 77-3/68-3), a "marked-up" draft of the Summary of Terms, when compared to the final, signed version of the agreement, shows that Defendants failed to include changes to the terms of the agreement requested by Plaintiffs' counsel. Exhibit 3 shows handwritten notes[2] in the margins of paragraphs 3, 4, and 5 of the draft agreement. The notes themselves are ambiguous, and it is not entirely clear what changes are requested or suggested. Whatever the notes mean, there is no evidence to indicate that Defendants ever agreed to make the

---

[2] Plaintiffs do not identify who made the handwritten notes, but it is the undersigned's recollection that these notes were made by Plaintiffs' counsel, Mr. Stine.

changes suggested in these notes. Comparison of the Exhibit 3 draft of the agreement to the signed Summary of Terms indicates that substantial changes were in fact made to each of the paragraphs marked in Exhibit 3. Although not all the changes are completely consistent with the handwritten notes on the draft, the changes to the final draft do show adjustments of the allocations consistent with Plaintiffs' concerns. As such, the handwritten notes on Exhibit 3 do nothing more than show that negotiations continued after the Exhibit 3 draft was presented.

The details of the final agreement, reflected in the signed Summary of Terms, were intensely negotiated by the parties. As Plaintiffs note, the process of negotiating the specific provisions of the Summary of Terms took approximately two and a half hours after the broad terms of the settlement agreement were reached. The parties reached an agreement to settle the case at approximately 6:00 p.m. (Plaintiffs' Statement of Material Undisputed Facts (SMF), Doc. 77/68, ¶ 8). Shortly after the parties reached the broad outlines of the agreement, counsel for Defendants produced a draft Summary of Terms. During the next two and a half hours, the Parties negotiated intensely over various specifics of the agreement and drafts of the agreement "went back and forth several times." (*Id.*). The final Summary of Terms was executed at approximately 8:30 p.m. (*Id.*, ¶ 9).

The Parties were particularly concerned with issues related to allocation of the settlement amount between the Title VII and FLSA claims, both because the FLSA settlement would be subject to approval by the District Court and because portions of the FLSA claims would be subject to tax withholding. Defendants repeatedly expressed concerns that a failure to withhold appropriate taxes could subject them to further liability from tax authorities. Some of the disagreements over these matters were negotiated with the assistance of the mediator, while certain technical details were negotiated directly among the attorneys. Both parties were represented by counsel with

experience in matters related to the taxability of FLSA and Title VII claims. Plaintiffs cannot now credibly contend that their attorneys failed to review specific terms of the final agreement that had been so intensely debated, and even if they did fail to do so, their failure would not void the final, written agreement that all parties signed in the presence of the mediator.

### 3. The Terms of the Agreement Specify that the District Court has the Responsibility to Determine Whether the FLSA Settlement Conforms to the Law.

After the parties reached a broad agreement on the settlement amount in this case, a large part of the ensuing negotiations related to the question of how much of the settlement amount to allocate to settlement of the FLSA claims in Case No. 3:20-cv-93-CDL. This question of allocation required significant discussion because a settlement of FLSA claims, unlike a settlement of Title VII claims, must be reviewed by the District Court for fairness. "When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgement after scrutinizing the settlement for fairness." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982).

Both parties were represented in the negotiations by experienced lawyers who were well aware of the approval requirement of *Lynn's Food Stores*, and the Parties negotiated very vigorously to reach an agreement that both Parties agreed, at the time of settlement, would be likely to pass review. As noted above, Plaintiff's Exhibit 3 offers some evidence of these negotiations between the parties. Exhibit 3 shows that paragraph 3 of an early draft of the Summary of Terms allocated $27,000 of the settlement amount to the FLSA claims. In Exhibit 3, the number 27,000 is struck through, and a handwritten note in the margin proposes the number 50,000. (Doc. 77-3/68-3, ¶ 3). In the final, signed agreement, paragraph 3 allocates $58,000 to settlement of the

10

FLSA claims. This increased allocation reflects Plaintiffs' concerns that a lower settlement amount might not obtain Court approval.

The agreement specifically contemplates submission of the FLSA settlement to the District Court for approval. Paragraph 2, which was unchanged from the initial draft to the final agreement, is headed "Requirement of Court Approval of FLSA Settlement." It stipulates, "The Parties agree to take reasonable steps necessary to obtain the Court's approval of the FLSA Lawsuit." (Doc. 77-4/68-4, ¶ 2). Although the terms of Paragraph 3 imply an agreement that both Parties considered the allocation to be a fair compromise of the contested issues, Paragraph 2 anticipates the possibility that the District Court might not approve the settlement and provides, "the Parties agree that if the Court declines to approve the FLSA Settlement, the Parties **shall work together cooperatively in good faith** to reallocate the Settlement Amount, as defined below, so that the Court will approve the FLSA Settlement." (*Id.*) (emphasis added).

Rather than submit the settlement to the District Court for approval as agreed, Plaintiffs have now decided unilaterally to apply the *Lynn's Food Stores* analysis to disapprove their own settlement. Plaintiffs have no right, under the settlement agreement or under the law, to usurp the role of Court in reviewing the settlement for fairness. Instead, they have apparently decided that they could have made a better deal and seek to undue the deal they made. Rather than working together cooperatively in good faith to secure approval of the settlement, Plaintiffs have sought in to undermine the agreement that they made. The agreement that Plaintiffs made requires them to submit the settlement to the District Court for approval, and Plaintiffs should be bound by their agreement.

Absent an attempt by one of the Parties to undermine their own agreement after the fact, the settlement reached by the Parties appears likely to pass review under *Lynn's Food Stores*. The

court in *Lynn's Food Stores* held that a compromise of FLSA back wage or liquidated damages claims requires "a stipulated judgment entered by a court which has determined that a settlement proposed by an employer and employees, in a suit by employees under the FLSA, is a fair and reasonable resolution of a bona fide dispute." *Lynn's Food* Stores, 679 F.2d at 1355. The decision does not otherwise set out specific criteria for determining what is "fair and reasonable" and what is "a bona fide dispute."

This case is certainly distinct from *Lynn's Food Stores* on its facts. In *Lynn's Food Stores*, the employer attempted to foist a settlement on its employees, who were not represented by counsel and had not even filed an action against the employer, against the objection of the Department of Labor. Similarly, this case is distinguishable from *Nall v. Mal-Motels Inc.*, 723 F.3d 1304 (11th Cir. 2013) in which the employer reached a settlement agreement with an employee, in a pending case, outside the presence of her counsel. The court held that a settlement obtained without the attorney's knowledge or participation was not a "stipulated judgment" within the meaning of *Lynn's Food Stores*. *Nall*, 723 F.3d at 1307.

Representation by counsel in an adversary proceeding is a key consideration for courts reviewing an FLSA settlement. As one district court has stated, "If the Parties are represented by competent counsel in an adversary context, the settlement they reach will, almost by definition, be reasonable. Rarely will the court be in a position to competently declare that such a settlement is 'unreasonable.'" *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1242 (M.D.Fla. 2010). Contexts don't get much more adversary than this one, and counsel doesn't get much more competent. In this case, Plaintiffs were represented by lawyers from two law firms with extensive experience in wage and hour litigation. The settlement was reached after months of contentious litigation and lengthy negotiations, including the assistance of two different mediators. In the second mediation,

agreement was reached after nearly ten hours of non-stop negotiation, in which nearly every point was contested and the issue of fairness under *Lynn's Food Stores* was specifically debated.

In addition to representation by counsel in an adversary proceeding, courts look to whether there is a bona fide dispute, such as a "disagreement over coverage, exemption, or computation of hours worked or rate of pay." *Dees*, 706 F. Supp. 2d at 1241. This case involved numerous complicated legal and factual issues related to whether the employees were properly categorized as tipped or non-tipped employees, whether Plaintiffs were required to work off the clock or perform side work outside their tipped duties, and whether tip pools were invalid or improperly distributed. The parties offered extremely different calculations of potential back pay awards. Defendants also asserted a good faith defense that would call into question the availability of liquidated damages on any back pay award.

Courts have been skeptical of FLSA settlement agreements that contain confidentiality clauses. The court in *Dees* reasoned that confidentiality "frustrates implementation of the 'private-public' rights granted by the FLSA and thwarts Congress's intent to ensure widespread compliance with the statute." *Dees*, 706 F. Supp. 2d at 1242. Both Parties in this case were represented by experienced counsel who were aware of the policy against confidentiality of FLSA settlements, and the Parties therefore negotiated an agreement that called for the execution of two separate settlement documents, one for the FLSA claims that was to be public and one for the Title VII and tort claims that was to be confidential. This arrangement was consistent with the policy of "private-public rights" recognized by the FLSA.

At least one court in the Eleventh Circuit has applied the factors for approval of Rule 23 class action cases in reviewing settlements of FLSA collective actions. These factors include: "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely

duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel." *Hamilton v. Frito-Lay, Inc.*, 2007 WL 2199981 (M.D.Fla. January 26, 2007). These factors also weigh in favor of approval of the settlement. Given the relationship among the Parties, there is certainly no fraud or collusion in this case. The litigation that has taken place just since the Parties reached their settlement agreement is evidence enough of the complexity, expense, and likely duration of this litigation. Continuing litigation of these cases to judgment could be ruinously expensive to all Parties and could drag on for many more months.

Plaintiffs have not shown that the settlement agreement they reached, with the assistance of two mediators and months of aggressive, arms-length negotiations, was unfair or unreasonable. Like all good settlements, this agreement represented a compromise that was mutually unsatisfying to both Parties but reasonably calculated to bring an end to costly and lengthy litigation that would benefit no one in the end.

### 4. Disagreements Over the Terms of the Final Settlement Documents Do Not Constitute a "Counteroffer" that Voids the Settlement

In their final argument, Plaintiffs appear to contend that certain provisions of the final General Settlement Agreement and FLSA Settlement Agreement requested by Defendants amounted to a "counteroffer," thus indicating that Defendants had not agreed to a settlement of the case. Plaintiffs, however, are the ones now contesting the existence of an enforceable agreement, not Defendants. As explained above, the agreement outlined in the Summary of Terms signed by all Parties on September 2, 2021, was a complete, enforceable agreement.

The Summary of Terms did leave it to the Parties to prepare separate final settlement documents for the two cases to be settled. Because of the approval requirement of *Lynn's Food*

*Stores*, a separate Settlement Agreement was required for the FLSA claims in Case No. 3:20-cv-93-CDL. The Summary of Terms provided:

> The Parties agree that this Summary will be used to prepare a General Settlement Agreement (as defined and described, below), and an FLSA Settlement Agreement (as defined and described, below), as well as a Joint Motion to Approve of the FLSA Settlement and Approval Order. The Parties agree that the FLSA Settlement Agreement, with the related Joint Motion to Approve of the FLSA Settlement and Approval Order, will be filed with the Court for approval on or before September 16, 2021. This deadline may be extended by mutual agreement of the Parties.
>
> (Doc. 77-4/68-4, ¶ 2).

Paragraph 7 of the Summary of Terms outlines in considerable detail the provisions to be set forth in the General Settlement Agreement and FLSA Settlement Agreement, including terms of the general release for both claims and non-disparagement and confidentiality agreements for the General Settlement Agreement. The Summary of Terms also included provisions for resolving any dispute related to the drafting of the final settlement documents:

> In the event the Parties are unable to agree on any provision of the General Settlement Agreement or the FLSA Settlement Agreement, the Parties consent to The Honorable Charles H. Weigle presiding over the dispute and to having Magistrate Judge Weigle resolve the disagreement using the executed version of this Summary as a guide for his award.
>
> (Doc. 77-4/68-4, ¶ 2).

Plaintiffs now contend that Defendants are insisting upon "new material terms" that constitute a "counteroffer" and somehow nullify the entire agreement. These terms are (1) that Defendants seek to include three additional Plaintiffs – Madison McDearis, Alex Bragan, and Rachel Bailey – to the settlement agreement; (2) that Defendants seek to add "a new injunctive relief provision in addition to the liquidated damages clause; and (3) that Defendants seek to add

"new tax indemnification clauses requiring the Plaintiffs to hold Defendants harmless for any later tax issues, including the payment of all taxes including the employer's portion." (Doc. 61/56, p. 6).

Two of these terms are not new but are specifically set forth in the Summary of Terms. Paragraph 1 of the Summary of Terms defines the term "Plaintiffs" to include all Plaintiffs in both the FLSA case and the Title VII case. It specifically names McDearis, Bragan, and Bailey among these Plaintiffs. While there are separate sub-categories of Plaintiffs labeled "Named Plaintiffs," "Opt-in Plaintiffs," and "FLSA Plaintiffs," the terms of Paragraph 1 make clear that the general term "Plaintiffs" refers to all Plaintiffs in both cases, collectively. Plaintiffs note that Bragan and Bailey were not parties to the Title VII case, Case No. 3:20-cv-115-CDL, and that McDearis was terminated from the Title VII suit by order of the District Court on May 19, 2021, granting, in part, Defendants' Motion to Dismiss. (Case No. 3:20-cv-115-CDL, Doc. 30 (May 19, 2021)). Nevertheless, inclusion of these Plaintiffs in the general release provisions of the General Settlement Agreement was contemplated by the terms of Paragraph 7.2 of the Summary of Terms, which states that Plaintiffs agree to execute a general release of claims to include

> any and all tort claims, demands, causes of action, or liability arising out of Plaintiffs' employment by or with Defendants, including, but not limited to any and all claims for wrongful discharge, intentional infliction of emotional distress, assault, battery, negligent hiring, supervision, or retention, claims under Title VII of the Civil Rights Act of 1964, the Family and Medical Leave Act of 1993, the Americans with Disabilities Act of 1990 (as amended), the Rehabilitation Act of 1973, or any other federal, state, or local law, or common law, for back pay, front pay, lost benefits, compensatory damages, liquidated damages, punitive damages or any other damages, whether such claims are presently known or hereafter discovered.

(Doc. 77-4/68-4, ¶ 7.2(a))

16

Inclusion of all Plaintiffs within this general release, including those Plaintiffs who were named only in the FLSA case, was necessary to effectuate a global settlement of all claims arising from the Plaintiffs' employment with Defendants, which was the clear intention of all parties throughout the negotiations, and without which the settlement would have been of limited value to Defendants. The separate settlement agreement document for the FLSA case was necessitated by the particular requirements and limitations of FLSA settlements, including the requirement of Court approval, issues related to taxation, and certain limitations on confidentiality provisions.

The Summary of Terms also shows that the settlement included an agreement that Plaintiffs would

> hold Defendants harmless and indemnify Released Parties for any liabilities, costs, and expenses, including attorneys' fees, assessed or caused to be assessed by any such taxing authority which result from Plaintiff's failure to remit taxes due on payments made to the Plaintiff pursuant to the FLSA Settlement Agreement or the General Settlement Agreement.

(Doc. 77-4/68-4, ¶ 8).

Thus, the Parties' agreement required that such indemnification language be included in the final settlement documents.

Defendants concede that their requested provision related to injunctive relief for violations of the non-disparagement and confidentiality agreements (see Doc. 77-7/68-7, p. 19) was not a material term of the agreement. Paragraph 7.2(e) of the Summary of Terms specifies liquidated damages as the remedy for breaches of the confidentiality agreement, while Paragraph 7.2(d) does not specify any remedy for violation of the non-disparagement agreement, leaving open any remedy authorized by law or equity in the event of breach. Although this requested provision is not warranted by the settlement agreement as memorialized in the Summary of Terms, Defendants' request to include such language does not constitute a "counteroffer" that voids the settlement or

allows the Plaintiffs to walk away from their agreement. The Summary of Terms includes a specific provision authorizing the mediator to resolve any dispute related to terms of the General Settlement Agreement, a provision that Plaintiffs did not attempt to employ.

### 5. Defendants are Entitled to Recover Reasonable Attorneys' Fees Incurred in Seeking to Enforce the Parties' Settlement Agreement

The settlement agreement reached by the Parties, as shown in the Summary of Terms, included a provision for attorneys' fees in the event that a party is forced to seek court assistance in enforcing the settlement:

> In the event a Party moves to enforce the General Settlement Agreement or the FLSA Settlement Agreement or to collect on any payments due under either agreement, the prevailing party to such an enforcement action may be awarded reasonable attorneys' fees, expenses, and costs.

(Doc. 77-4/68-4, ¶ 9).

In addition to this contractual provision, the Court has statutory authority, under 28 U.S.C. § 1927 to sanction an attorney for unreasonably and vexatiously multiplying litigation. The statute provides that:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927

This statute "prohibits an attorney's waste of judicial resources, multiplication of the proceedings, and conduct that causes unfair delays." *Collar v. Abalux, Inc.*, 806 Fed. App'x. 860, 863 (11th Cir. 2020).

18

Plaintiffs' refusal to abide by the terms of their agreement has indeed been a waste of judicial resources. The undersigned invested nearly ten hours of court resources in a strenuous mediation proceeding, in addition to approximately seven hours of preparation prior to the mediation, all free of charge to the parties. Two and a half hours of the mediation were dedicated to negotiations over the terms of the written Summary of Terms that Plaintiffs now contest. In the end, the Parties reached an agreement that was fair and reasonable and involved considerable compromise by both sides.

Now, well more than 30 hours of additional court resources have been expended in this review of Defendants' motion to enforce the settlement agreement. Plaintiffs have alternately contended that their agreement was no agreement, that the agreement does not say what it says, and that the Defendants tricked them into signing a document that did not reflect their agreement. Plaintiffs go so far as to accuse Defense counsel, in writing, of lying, an accusation that is not supported by any evidence and is in fact false.

Plaintiffs' position has also resulted in unfair delay. This case should have been concluded four months ago. The Plaintiffs themselves await their compensation, perhaps assured by their counsel that a more advantageous deal can be forced through further aggressive tactics. Defendants have had to expend additional resources not only in seeking enforcement of the agreement, but also in continuing litigation of these cases. The actual Parties, Plaintiffs and Defendants alike, have had to endure four more months of the anxiety and uncertainty that are always a part of litigation. Because Plaintiffs' efforts to undermine their own settlement agreement have unreasonably and vexatiously multiplied the proceedings in this case, Defendants are entitled to recover their costs, expenses, and attorneys' fees incurred in litigating the present motion for enforcement of the settlement.

**6.   Sanctions against Plaintiff Kayla Singleton are not Warranted at this Time.**

Finally, Defendants seek sanctions against Plaintiff Kayla Singleton for violating a non-disparagement provision of the settlement agreement. The Summary of Terms shows that the settlement agreement called for a non-disparagement clause and confidentiality clause in connection with the General Settlement Agreement of the Title VII and tort claims in Case No. 3:20-cv-115-CDL. (Doc. 77-3, ¶ 7.2(d) and (e)). The agreement called for a liquidated sanction of $20,000 for violations of this agreement. Defendants have presented evidence showing that on October 1, 2021, Plaintiff Singleton posted a lengthy Facebook post that makes several disparaging statements about Defendant Walker and Defendant Last Resort Grill and that discloses certain aspects of the settlement agreement and negotiations. (Doc. 47-6). Although these statements would appear to be in violation of the agreement, sanctions are not warranted at this time, as the post suggests that Ms. Singleton was under the impression that the settlement agreement would not be enforced, based on the Court's September 30, 2021 text order denying Defendants' Motion to Stay (Case No. 3:20-cv-115-CDL, Doc. 50).

## CONCLUSION

For the reasons set forth above, it is hereby **RECOMMENDED** that Defendants' Motion to Enforce Settlement Agreement (Doc. 52/47) be **GRANTED**, and that the Court order the Parties to prepare and execute the FLSA Settlement Agreement and General Settlement Agreement, as dictated in the Summary of Terms, within 14 days. To the extent that the Parties are unable to agree on any terms of the FLSA Settlement Agreement or General Settlement Agreement, it is recommended that the Court order the Parties to submit their drafts of the agreement to the Honorable Charles H. Weigle for resolution, as dictated in Paragraph 2 of the Summary of Terms.

It is further **RECOMMENDED** that Court order the Plaintiffs to pay Defendants' reasonable expenses, costs, and attorneys' fees for the litigation of the present Motion to Enforce Settlement, not to include expenses, costs, and fees for ongoing litigation in the underlying cases, and that Defendants be directed to submit a statement itemizing the amounts they seek within seven days, with Plaintiffs to submit any response within seven days of the statement being submitted.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, <u>WITHIN FOURTEEN (14) DAYS</u> after being served with a copy thereof. The District Judge shall make a de novo determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO RECOMMENDED**, this 10th day of February, 2022.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge